# STATE OF MICHIGAN

# COURT OF APPEALS

TENNINE CORPORATION,

Plaintiff-Appellant,

v

BOARDWALK COMMERCIAL, L.L.C.,
BOARDWALK CONDOS, L.L.C., CENTRAL
MICHIGAN RAILWAY COMPANY, STRAITS
CORPORATION, DARK PROPERTIES, INC.,
and PARKPLACE PROPERTIES OF WEST MI,
L.L.C.,

Defendants-Appellees.

FOR PUBLICATION
March 31, 2016
9:00 a.m.

No. 323257; 324480
Kent Circuit Court
LC No. 12-006963-CE

Before: SAAD, P.J., and STEPHENS and O'BRIEN, JJ.

O'BRIEN, J.

In Docket No. 323257, plaintiff, Tennine Corporation, appeals as of right the trial court's opinion and order granting summary disposition in favor of defendant, Central Michigan Railway Company (CMR).[1] We reverse the trial court's dispositive motion decision regarding CMR and remand for further proceedings consistent with this opinion. In Docket No. 324480, plaintiff appeals as of right the trial court's opinion and order granting the motion for costs and attorney fees in favor of defendants, Boardwalk Commercial, L.L.C., Boardwalk Condos, L.L.C., and Parkplace Properties of West MI, L.L.C. (the Boardwalk defendants). We affirm the trial court's award of actual costs and attorney fees in their favor.

---

[1] The trial court granted summary disposition in favor of all defendants except for plaintiff's claim against CMR for trespass. However, plaintiff voluntarily dismissed the trespass claim in order to proceed with the appeal. The trial court's rationale for granting summary disposition in favor of defendants was contingent on the party at issue, the claim raised, and the evidence produced. Plaintiff's challenge to the summary disposition decision solely involves the issue of standing, and the trial court's standing decision only impacted CMR. Accordingly, we do not address the trial court's summary disposition decision involving the other defendants.

-1-

# I. BASIC FACTS AND PROCEDURAL HISTORY

This case concerns real property located in Grand Rapids, Michigan, conveyed from the Berkey & Gay Furniture Company to the Grand Trunk Western Railroad Company (Grand Trunk) in 1914, and from Grand Trunk to defendant CMR in 1987. There is no dispute that this property was conveyed to CMR as a railroad right-of-way (ROW) and was to remain in its possession "as long as" the property was used for railway purposes. The Railroad Code, MCL 462.101 *et seq.*, defines a ROW as "the track or roadbed owned by a railroad and that property owned by a railroad which is located on either side of its tracks and which is readily recognizable to a reasonable person as being railroad property . . . ." MCL 462.273(2).

The relevant portion of the ROW began at Monroe Street and continued south to Mason Street. William Tingley, plaintiff's general manager, averred that the northern portion of the ROW between Monroe Street and Walbridge Street was adjacent to plaintiff's property located at 1009 Ottawa Street NW. CMR purchased all rights, title, and interest in the ROW with the intent of using it as a railroad and transported paper to and from the building that housed the Grand Rapids Press. Its use ceased as a railroad after the Grand Rapids Press moved to another city in 2004. CMR then attempted to abandon the ROW and have it converted into a recreational trail.

Pursuant to federal law, CMR was required to file an application regarding its abandonment of the ROW with the federal Surface Transportation Board (STB). See 49 USC 10903(a)(1) (stating that a rail carrier intending to "abandon any part of its railroad lines" "must file an application relating thereto with the [STB]. An abandonment or discontinuance may be carried out only as authorized under this chapter."). That is, CMR could not abandon the ROW without authorization from the STB. In instances of railroad abandonment, federal law directed the STB to encourage the establishment of recreational trails "in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use . . . ." 16 USC 1247(d).

On March 12, 2009, CMR applied to the STB for authorization to abandon the ROW and have it converted to recreational use pursuant to 16 USC 1247(d). Defendant, Dark Properties, Inc., was created for the purpose of assisting CMR with transforming the ROW to recreational use after the STB authorized abandonment. However, the STB did not grant CMR authorization to abandon the ROW because negotiations were not completed.

Defendants, Boardwalk Commercial, L.L.C., and Boardwalk Condos, L.L.C., acquired title to real property that was formerly part of the Berkey & Gay Furniture Company and constructed condominiums on this property. Included in the property was a reversionary interest in the southern segment of the ROW, which began at Walbridge Street and ended at Mason Street. On April 28, 2012, these defendants transferred their reversionary interest in the southern segment of the ROW to Parkplace Properties of West MI, L.L.C.

Plaintiff's representative averred that on November 17, 2011, a work crew from Jaeger Salvage entered its property and demolished the tracks and rails on the northern and southern parts of the ROW. The crew stacked railroad ties on plaintiff's property. On November 18,

2011, the crew returned with two backhoes to continue the demolition. Soil from the ROW clung to the backhoes and was allegedly tracked onto plaintiff's property. Plaintiff's representative told the crew that the soil on the ROW was contaminated with hazardous chemicals and that the crew did not have permission to enter plaintiff's property. A crew member purportedly indicated that Beth Visser, an agent of the Boardwalk defendants, gave the crew permission to enter the property. The crew complied with plaintiff's request that they stop work, and they removed the railroad ties from plaintiff's property. This activity serves as the impetus for this litigation.

Plaintiff gave notice of its intent to file a claim pursuant to Michigan's Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.* On July 30, 2012, plaintiff filed suit against defendants alleging violations of the NREPA, trespass, and nuisance. All defendants filed motions for summary disposition. Pertinent to the appeal, the trial court held that plaintiff did not have standing to raise the NREPA claim against CMR. Following the grant of summary disposition to the Boardwalk defendants, the trial court granted their request for actual costs, including attorney fees, pursuant to MCR 2.405, because plaintiff did not accept their offer of judgment. From these rulings, plaintiff appeals. On November 25, 2014, the appeals were consolidated "to advance the efficient administration of the appellate process." *Tennine Corp v Boardwalk Commercial, LLC*, unpublished order of the Court of Appeals, issued November 25, 2014 (Docket Nos. 323257, 324480).

## II. DOCKET NO. 323257

Plaintiff alleges that the trial court erred in concluding that it lacked standing to pursue the NREPA or environmental claims against CMR. We agree.

The question of whether a party has standing presents a question of law subject to de novo review on appeal. *Manuel v Gill*, 481 Mich 637, 642-643; 753 NW2d 48 (2008). The standing doctrine's purpose is to determine whether a litigant has a sufficient interest to "ensure sufficient and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (citation omitted). The standing requirement ensures that only those with a substantial interest may raise a claim in court. *Trademark Props of Mich, LLC v Fed Nat'l Mtg Ass'n*, 308 Mich App 132, 136; 863 NW2d 344 (2014). When a party's standing is contested, the issue becomes whether the proper party is seeking adjudication, not the justiciability of the issue, and standing is not contingent on the merits of the case. *Id*. at 136-137. Standing may be conferred by legislative expression or implied by duties that arise from the law. *Lansing Sch Ed Ass'n*, 487 Mich at 357-358. A corporation has the power, in furtherance of its corporate purposes, to sue and be sued and "participate in actions and proceedings, judicial, administrative, arbitrative, or otherwise, in the same manner as natural persons." MCL 450.1261(b).

The purpose of Part 201 of the NREPA, titled Environmental Remediation, MCL 324.20101 to MCL 324.20142, is "to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the state." MCL 324.20102(c). Pursuant to the NREPA, MCL 324.101 *et seq*., a plaintiff shall give a written notice advising of the intent to sue, the basis for the suit, and the relief requested at least 60 days in advance of the filing of a complaint. MCL

324.30135(3)(a). The notice[2] must be sent to the DEQ, the attorney general, and the proposed defendants. *Id*. MCL 324.20135 addresses who may pursue a NREPA action and provides in relevant part:

> (1) Except as otherwise provided in this part, a person, including a local unit of government on behalf of its citizens, whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release from a facility, other than a permitted release or a release in compliance with applicable federal, state, and local air pollution control laws, by a violation of this part or a rule promulgated or order issued under this part, or by the failure of the directors to perform a nondiscretionary act or duty under this part, may commence a civil action against any of the following:

> (a) An owner or operator who is liable under section 20126 for injunctive relief necessary to prevent irreparable harm to the public health, safety, or welfare, or the environment from a release or threatened release in relation to that facility.

> (b) A person who is liable under section 20126 for a violation of this part or a rule promulgated under this part or an order issued under this part in relation to that facility.

The NREPA defines a "person" as "an individual, partnership, *corporation*, association, governmental entity, or other legal entity." MCL 324.301(h) (emphasis added). The circuit court has jurisdiction to remedy the NREPA violation, and the remedies include injunctive relief, civil fines, and action necessary to correct the violation. MCL 324.20135(2).

MCL 324.20126 establishes who is liable under the NREPA, and it includes, "[t]he owner or operator of a facility if the owner or operator is responsible for an activity causing a release or threat of release." MCL 324.20126(1)(a). An "operator" encompasses a "person who is in control of or responsible for the operation of a facility," MCL 324.20101(1)(jj), and an "owner" involves a "person who owns a facility," MCL 324.20101(1)(kk). A "facility" is defined as "any area, place, parcel or parcels or property, or portion of a parcel of property where a hazardous substance in excess of the concentrations that satisfy the cleanup criteria for unrestricted residential use has been released, deposited, disposed of, or otherwise comes to be located." MCL 324.20101(s). A "[r]elease includes, but is not limited to, any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing of a hazardous substance into the environment . . . ." MCL 324.20101(pp). A "hazardous substance" includes any substance defined as a hazardous substance under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA). MCL 324.20101(x)(*ii*). CERCLA's definition of hazardous substance involves "any hazardous air pollutant listed under section 112 of the Clean Air Act . . . ." 42 USC 9601(14). The Clean Air Act includes arsenic and lead compounds among its list of pollutants. 42 USC 7412(b)(1).

---

[2] The parties do not contest that notice was given or its sufficiency.

MCL 324.20135 is classified as the "citizens suit" provision of the NREPA. *1031 Lapeer LLC v Rice*, 290 Mich App 225, 235; 810 NW2d 293 (2010). This provision is intended to govern lawsuits brought by persons when their health or enjoyment of the environment is at risk from a facility or threat of a release from a facility. *Id*. When a plaintiff does not bring suit as a person "whose health or enjoyment of the environment" was adversely affected by a release or threat of release of hazardous substances, but rather, seeks only to recover the monetary costs associated with remediation, he lacks standing to sue under the NREPA. *Flanders Indus, Inc v Michigan*, 203 Mich App 15, 34; 512 NW2d 328 (1993).

In *Flanders*, the plaintiff—a corporation—purchased an industrial plant on the shores of Green Bay in 1982. Before the purchase, the owner and operator, a furniture manufacturer, discharged paint sludge into Green Bay; a fact unknown to the plaintiff. Because of the paint sludge, the land under Green Bay was contaminated, and the state owned this land. *Id*. at 18-19. In 1989, the DNR notified the plaintiff that it was subject to liability and must remediate the contamination pursuant to the Michigan Environmental Response Act (MERA), MCL 299.601 *et seq*.[3] The plaintiff incurred expenses in removing the sludge. *Id*. at 19. In 1992, the plaintiff sued the state, raising several counts arising from the costs it incurred, including a claim for injunctive relief under former MCL 299.615(1), which allowed "[a] person . . . whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release from a facility" to bring a civil action against certain entities. *Id*. at 32. This Court held that the plaintiff lacked standing to sue under former MCL 299.615:

> Section 15 [i.e., former MCL 299.615] provides that "a person . . . whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release" may bring suit. Plaintiff is not a person whose health may be affected. Rather, plaintiff is seeking relief only from the monetary costs associated with the release caused by [the furniture company]. Plaintiff, therefore, is not within the class of persons who may seek relief under the provisions of [former MCL 299.615]. [*Flanders*, 203 Mich App at 34.]

Because the plaintiff lacked standing to sue under the former MERA, this Court concluded that the trial court properly dismissed the plaintiff's claim under that provision. *Id*. Similarly in *1031 Lapeer LLC*, 290 Mich App at 235, this Court held that the plaintiffs could not maintain their suit premised on environmental violations when the foundation for the fraud and statutory violations arose from the parties' contract. Because the plaintiffs sought rescission of the contract and damages, but not injunctive relief for the environmental contamination, MCL 324.20135 did not apply. *Id*.

In the present case, the trial court held that because plaintiff was a corporation, plaintiff was not a person whose health or enjoyment of the environment could be adversely affected by a

---

[3] The MERA was repealed by the Legislature, effective March 30, 1994, 1994 PA 451, but the MERA's provisions were recodified at Part 201, MCL 324.20101 *et seq*., of the NREPA. *RCO Engineering, Inc v ACR Indus, Inc (On Remand)*, 246 Mich App 510, 514; 633 NW2d 449 (2001).

release of hazardous chemicals, relying on the decision in *Flanders*. However, the *Flanders* Court did not hold that a corporation lacked standing under the NREPA simply because of its corporate status. Rather, it held that the plaintiff lacked standing because it brought suit under the former MERA to obtain relief for the costs of *remediation* ordered by the DNR. *Flanders, 203 Mich App at 34*. The plaintiff did not bring suit in the capacity of a person *whose health or enjoyment of the environment was adversely affected*; therefore, it lacked standing under that statute. *Id.*

In contrast, in this case, plaintiff alleged in its complaint that the removal activity on the ROW released or threatened to release hazardous substances that would endanger the health of people on plaintiff's property and reduce the value of plaintiff's property. Additionally, plaintiff advised in its notice to sue that the removal activity was adversely affecting its health and enjoyment of the environment. Because plaintiff sued as a person whose health and enjoyment of the environment was adversely affected by a release of contamination, the reason for the plaintiff's lack of standing in *Flanders*, 203 Mich App at 34—that the plaintiff sued not as a person whose health or enjoyment of the environment was adversely affected, but rather for relief from the costs of remediation—does not apply to plaintiff. Consequently, we must address whether a corporation has standing to sue under the NREPA when that corporation sues as a person whose health and enjoyment of the environment may be affected by contamination.

The interpretation and application of a statute presents a question of law that the appellate court reviews de novo. *Tomecek v Bavas*, 482 Mich 484, 490; 759 NW2d 178 (2008). The principal rule of statutory construction is to discern and give effect to the legislative intent by examining the most reliable evidence of intent, the statutory language. *Gardner v Dep't of Treasury*, 498 Mich 1, 5-6; 869 NW2d 199 (2015). When the statutory language is unambiguous, the Legislature intended the meaning clearly expressed, the statute is enforced as written, and no further judicial construction is necessary. *Krusac v Covenant Med Ctr, Inc*, 497 Mich 251, 256; 865 NW2d 908 (2015).

"Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217-218; 801 NW2d 35 (2011) (quotation omitted). "The words used by the Legislature are given their common and ordinary meaning." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). This Court may consult a dictionary to define terms that are undefined in the statute. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). "Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). A legal provision is ambiguous only if it irreconcilably conflicts with another provision or when it is equally susceptible to two or more meanings. *Mayor of City of Lansing v Pub Serv Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (quotation marks and citation omitted). "[A] finding of ambiguity is to be reached only after all other conventional means of [] interpretation have been applied and found wanting." *Id.* at 165 (quotation marks and citation omitted).

First, plaintiff is a corporation, and the NREPA includes a corporation in the definition of a person. MCL 324.301(h). Therefore, plaintiff is a person under the NREPA. See *Hayes v*

*Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007) ("When a statute specifically defines a given term, that definition alone controls."). However, under the specific language of MCL 324.20135(1), *Krusac*, 497 Mich at 256, not all persons have standing; rather, only those persons "whose health or enjoyment of the environment is or may be adversely affected by a release from a facility or threat of release from a facility" may commence a civil action.

Plaintiff did not present any evidence that the health of its employees was compromised as a result of the removal activity in the ROW. Consequently, we focus on whether plaintiff, as a corporation, may suffer from loss of the enjoyment of the environment as a result of any release. MCL 324.20135(1).

The NREPA defines "environment" as "land, surface water, groundwater, subsurface strata, air, fish, wildlife, or biota within the state." MCL 324.20101(1)(o). The statute does not define "enjoyment," consequently this Court may refer to a dictionary to determine its meaning. *Koontz*, 466 Mich at 312. *Black's Law Dictionary* (10th ed) defines "enjoyment" as "**1.** Possession and use, esp. of rights of property. **2.** The exercise of a right." Furthermore, *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "enjoyment" as "possession and use . . . ." In light of these definitions, we conclude that a corporation may exercise the right to use its land or water—in other words, a corporation may enjoy the environment. Indeed, our Supreme Court has long held that a corporation may "enjoy" its real property. See, e.g., *Grand Rapids, N & LSR Co v Grand Rapids & IR Co*, 35 Mich 265, 271; 24 Am Rep 545 (1877) (stating that a corporation's right to "enjoy" its land and property is "sacredly guarded and protected under our constitution"). Therefore, under the statute's plain language, a corporation may have standing to sue. *Krusac*, 497 Mich at 256.

And, clearly, a corporation's enjoyment of the environment may be adversely affected by the release or threat of release of hazardous substances. For example, contaminants may prevent a corporation from using its land or water in certain ways. See MCL 324.20102(c) (stating that a purpose of the NREPA is to eliminate risks to environmental contamination). Therefore, the plain language of MCL 324.20135(1) affords a corporation standing to sue if its "enjoyment of the environment is or may be adversely affected by" a release or threat of release of hazardous substances. *Krusac*, 497 Mich at 256.

Furthermore, when construing a statute, a "court must consider the object of the statute in light of the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purposes of the statute." *CD Barnes Assoc, Inc v Star Heaven, LLC*, 300 Mich App 389, 408; 834 NW2d 878 (2013). An examination of the purposes of the NREPA indicates that the Legislature did not intend corporations to be without standing simply because of the corporate status. As discussed *supra*, the purpose of Part 201 of the NREPA is "to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, welfare, or to the environment from environmental contamination at facilities within the state." MCL 324.20102(c). And, the Legislature stated "[t]hat to the extent possible, consistent with requirements under this part and rules promulgated under this part, response activities shall be undertaken by persons liable under this part." MCL 324.20102(g). The Legislature further declared that Part 201 "is intended to foster the redevelopment and reuse of vacant manufacturing facilities and abandoned industrial sites that have economic development potential, if that redevelopment or reuse assures the protection of the public health, safety,

welfare, and the environment." MCL 324.20102(*l*). Accordingly, preventing a corporation from bringing suit under the NREPA would be contrary to the stated purpose and goals of Part 201.

In sum, plaintiff is a corporation, and its health or enjoyment of the environment may be adversely affected by a release or threat of release from a facility. Indeed, such injury is precisely what plaintiff alleged in its complaint to the trial court. In other words, plaintiff "brought suit in the position of [a person] whose health or enjoyment of the environment may be adversely affected by the" alleged contamination. *1031 Lapeer LLC*, 290 Mich App at 235. Therefore, plaintiff had standing to sue under the NREPA, and the trial court erred in granting CMR's motion for summary disposition of plaintiff's claim pursuant to the NREPA for lack of standing.[4]

III. DOCKET NO. 324480

Lastly, plaintiff asserts that the trial court erred by awarding offer of judgment sanctions when such an award was unwarranted pursuant to the interest of justice exception. We disagree.

In May 2013, each Boardwalk defendant submitted an offer of judgment of $500. Plaintiff did not accept the offers, but instead requested additional information regarding ownership of the parcel. However, there is no indication that plaintiff filed a motion to compel the Boardwalk defendants to disclose ownership information. In January 2014, the Boardwalk defendants moved for summary disposition, and the trial court granted the motion, concluding that there was no evidence that they held an ownership interest or that the criteria for reversion of the property was satisfied. Additionally, the trial court rejected the contention that an agent of the Boardwalk defendants authorized the work because the evidence was premised on hearsay. Subsequently, the Boardwalk defendants moved for offer of judgment sanctions. The trial court found that the failure to accept the offers of judgment entitled the Boardwalk defendants to an award of $23.04 in costs and $21,368.53 in attorney fees. Plaintiff does not contest the amount of the award on appeal, but only disputes the failure to apply the interest of justice exception, MCR 2.405(D)(3). Because the basis of the trial court's grant of summary disposition in favor of the Boardwalk defendants was not challenged, *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004), the propriety of their dismissal is not at issue,[5] and we address the merits of the award in their favor.

The proper interpretation of a court rule is reviewed de novo, and the same principles governing the construction of statutes are applied. *Fraser Trebilcock Davis & Dunlap PC v*

---

[4] We express no opinion regarding whether CMR's actions constitute a release and whether a facility was involved. On remand, the parties may address other applicable provisions of the NREPA.

[5] Plaintiff's statement of the issue in its brief on appeal solely challenges whether it had standing to pursue a claim pursuant to the NREPA. The standing decision by the trial court only pertained to CMR. Accordingly, the summary disposition ruling addressing the Boardwalk defendants was abandoned. MCR 7.212(C)(5); *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003).

*Boyce Trust 2350*, 497 Mich 265, 271; 870 NW2d 494 (2015). However, the factual findings underlying an award of attorney fees are reviewed for clear error. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 516; 844 NW2d 470 (2014). "A finding of the trial court is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made." *Id*. However, the trial court's determination that the interest of justice exception applies to the facts of a specific case is reviewed for an abuse of discretion. *Derderian*, 263 Mich App at 374. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Michigan follows the "American rule" which prohibits an award of attorney fees unless a statute, court rule, or contractual provision expressly provides to the contrary. *Haliw v Sterling Hts*, 471 Mich 700, 706-707; 691 NW2d 753 (2005); *Watkins v Manchester*, 220 Mich App 337, 342; 559 NW2d 81 (1996). Attorney fees may be awarded under MCR 2.405, which is known as "the offer of judgment rule." *Lech v Huntmore Estates Condo Ass'n*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 320028), slip op at 3; *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 297; 769 NW2d 234 (2009). The purpose of the offer of judgment rule is to avoid protracted litigation and encourage settlements. This rule permits a party to serve on the opponent a written offer to stipulate to the entry of judgment. If the offeree rejects the offer and the adjusted verdict is more favorable to the offeror than the average offer, recovery of actual costs from the offeree is permitted. *Id*.

A judgment arising from the grant of a dispositive motion constitutes a verdict for purposes of MCR 2.405, and allows for the imposition of sanctions. *Id*. The court rule provides, in relevant part:

> If an offer is rejected, costs are payable as follows:
>
> (1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.
>
> * * *
>
> (3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule. [MCR 2.405(D).]

Because the interest of justice provision is the exception to a general rule, it should not be applied absent unusual circumstances. *Luidens v 63rd Dist Court*, 219 Mich App 24, 33; 555 NW2d 709 (1996).

> Factors such as the reasonableness of the offeree's refusal of the offer, the party's ability to pay, and the fact that the claim was not frivolous "are too common" to constitute the unusual circumstances encompassed by the "interest of justice" exception. However, the exception may be applicable when an offer is made in the spirit of "gamesmanship . . . , rather than a sincere effort at negotiation," or when litigation of the case affects the public interest, such as a

case resolving an issue of first impression. [*Derderian*, 263 Mich App at 391 (citations omitted).]

In *AFP Specialties*, 303 Mich App at 500, the defendant purchased real property in Kalkaska County with the intent to convert the property into a restaurant. Michigan's construction code required the defendant to install a fire suppression system on the property, and the defendant hired the plaintiff, AFP Specialties, to install the system. *Id.* The plaintiff subcontracted Etna to install it. When the defendant failed to pay the plaintiff, it filed suit for breach of contract, requesting money damages and foreclosure on its construction lien. *Id.* at 501. Etna filed a counterclaim against the plaintiff for money damages, and after Etna prevailed at trial, the trial court awarded Etna attorney fees under MCR 2.405. *Id.* at 499. On appeal, the plaintiff argued that the trial court abused its discretion in awarding attorney fees because the interest of justice exception precluded the award because Etna engaged in gamesmanship. *Id.* at 519-520.

This Court rejected the plaintiff's argument that Etna engaged in gamesmanship because its offer of judgment did not serve as a compromise or encourage settlement. *Id.* at 519. We concluded that evidence of gamesmanship or a *de minimis* offer was lacking where "there was no case evaluation award to compare with Etna's offer of judgment." Rather, Etna's offer of judgment was only slightly more than what AFP admitted that it clearly owed to Etna." *Id.* at 519-520 (emphasis in original). Furthermore, there was no indication that the plaintiff made a counteroffer in an attempt to resolve the legal dispute between the parties. Rather, the record indicated that the plaintiff was "simply unwilling to compromise at all" to resolve its dispute with Etna. Although the plaintiff's rejection of Etna's offers of judgment may have been reasonable, this Court held that the reasonableness of the plaintiff's rejection was not an unusual circumstance encompassed in the interest of justice exception. *Id.* This Court thus concluded that the trial court did not abuse its discretion in refusing to apply the interest of justice exception. *Id.* at 520.

In the present case, plaintiff does not dispute that the actual verdict is more favorable to the Boardwalk defendants as the offerors or contest the amount of costs and attorney fees awarded. Rather, it only contends that the interest of justice exception should be applied because the Boardwalk defendants did not respond to informal requests from plaintiff's counsel regarding documentation of ownership and the minimal amount of the offers demonstrated that it was not a legitimate offer but gamesmanship. The question of ownership was raised in the context of defendants' motions for summary disposition. With regard to the Boardwalk defendants, plaintiff did not present evidence that those entities owned the disputed parcel. Indeed, although the issue of ownership may present a factual question, the nonmoving party must establish a genuine issue of material fact with admissible documentary evidence. *Ghaffari v Turner Constr Co (On Remand)*, 268 Mich App 460, 463; 708 NW2d 448 (2005). Although plaintiff contends that the Boardwalk defendants failed to offer any evidence regarding ownership, there is no indication that plaintiff identified information that was withheld or filed a motion to compel production of evidence regarding ownership. Moreover, the allegations that the Boardwalk defendants had an ownership interest or obtained a reversion interest through abandonment is belied by the evidence submitted on behalf of CMR.

Although plaintiff argues that the Boardwalk defendants' offers of judgment were *de minimis*, there is no amount with which to compare their offers. There was no case evaluation award, and plaintiff did not request a specific amount of monetary damages. There is no information that plaintiff made a counteroffer under MCR 2.405, which could provide the trial court a manner in which to determine whether the offers were *de minimis*. See *AFP Specialties*, 303 Mich App at 519-520. Therefore, the trial court did not clearly err in finding that the amounts of the offers failed to indicate that the Boardwalk defendants engaged in gamesmanship. *Id*.[6] Accordingly, the trial court did not abuse its discretion in holding that the interest of justice exception did not bar an award costs and fees under MCR 2.405. *Derderian*, 263 Mich App at 374.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. In light of the public question involved, the parties may not tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Henry William Saad
/s/ Cynthia D. Stephens

---

[6] Plaintiff also asserted that unusual circumstances warrant application of the interest of justice exception because the complaint requested equitable relief. However, its reliance on a concurring opinion is inappropriate because plurality decisions in which a majority of the participating justices do not agree to the reasoning is not a binding interpretation pursuant to the doctrine of stare decisis. *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976). Moreover, this Court has explicitly held that MCR 2.405 applies where a plaintiff seeks both equitable and monetary relief. *McManus v Toler*, 289 Mich App 283, 290; 810 NW2d 38 (2010).

-11-