*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIM T. CAPELLO and JODI A. CAPELLO,

        Plaintiffs-Appellants,

v

KEVIN WALTON and MELISSA WALTON,

        Defendants-Appellees.

UNPUBLISHED
March 28, 2024

No. 364006
Oakland Circuit Court
LC No. 2021-190542-CH

AFTER REMAND

Before: BOONSTRA, P.J., and GADOLA and MALDONADO, JJ.

PER CURIAM.

This breach of contract action, in which plaintiffs challenge the trial court's order awarding offer-of-judgment sanctions to defendants pursuant to MCR 2.405(D), returns to us after a remand for consideration of the interest-of-justice exception. On remand, the trial court concluded that the exception does not apply. We affirm.

## I. BACKGROUND

The facts of this case began when plaintiffs listed their house in Novi for sale. On September 14, 2021, Kevin Walton, with his wife Melissa Walton acting as his agent, entered into a contract to purchase the house for $680,000 in cash, and the sale was set to close on October 15. However, defendants' lives were upended on September 28 when Kevin Walton's brother was struck by a drunk driver and killed. Because Kevin Walton's brother was predeceased by his wife, defendants were suddenly entrusted with the care of their two minor nieces, one of whom had serious medical problems and also passed away during the pendency of this litigation. Moreover, Kevin Walton had to temporarily relocate to Florida so the girls could finish the semester at their current school and so he could tend to his brother's estate. The upheaval in their lives caused defendants to waver in their desire to purchase the house, and they proposed an arrangement through which they would rent the house with an option to purchase it at the conclusion of the

lease term. However, the parties could not reach an agreement with that plan, and defendants backed out of the sale.

Defendants announced their intent to breach the contract on October 11, and plaintiffs filed this lawsuit two days later. The house was not relisted until the following January; according to plaintiffs, the delay was caused by the fact that they largely packed up the house and sold much of the furniture in anticipation of closing the sale, so they needed time to restage the house. The house was subsequently sold, approximately one month after it was relisted, for $703,000; this was $23,000 more than the agreed upon price in the proposed sale to defendants. Nevertheless, plaintiffs continued to maintain that they had suffered damages, and the lawsuit persisted. It is undisputed that plaintiffs did pay higher commission fees in the new sale than they would have if defendants had performed because Melissa Walton was also the buyer's agent in the failed transaction and was not planning to accept a commission; however, even accounting for the increased commissions, plaintiffs made $1,220 more from the successful sale than they would have if they sold to defendants. Plaintiffs were undeterred; they insisted that they suffered damages as a result of "carrying costs" arising from the delay in selling the house. Moreover, plaintiffs were convinced that Kevin Walton never actually had sufficient funds to perform the contract, insisting that his proof-of-funds letter from Oppenheimer bank was a forgery.

As discovery progressed, defendants became convinced that plaintiffs could not establish damages. The *only* evidence of damages was a "prorations document" prepared by plaintiffs that, in essence, was a list of expenses plaintiffs claimed to have incurred as a result of the breach. This document was unsworn and was not supported by any documentation. Moreover, defendants believed that Melissa Walton was shielded entirely from liability arising from Kevin Walton's breach due to a provision of the purchase agreement releasing brokers from liability. On March 21, 2022, defendants offered to stipulate to judgment for a sum certain in the amount of $1 for the claims against Melissa Walton and $821.71 for the claims against Kevin Walton. Plaintiffs declined the offer by failing to accept within 21 days. The trial court ultimately granted summary disposition in favor of defendant based on its agreement with defendants that plaintiffs failed to establish damages.

Plaintiffs appealed the court's decision to grant offer-of-judgment sanctions,[1] and this case was remanded because the trial court did not address the interest-of-justice exception to the offer of judgment rule when it imposed the sanction.[2] On January 7, the trial court issued a detailed opinion explaining that plaintiffs were not entitled to the interest-of-justice exception. The case has now returned to us for a complete review of plaintiffs' claims, which we conclude are without merit.

---

[1] In a separate appeal, plaintiffs' delayed application for leave to appeal the order granting summary disposition was denied. Capello v Walton, unpublished order or the Court of Appeals, entered June 28, 2023 (Docket No. 364509).

[2] *Capello v Walton*, unpublished per curiam opinion of the Court of Appeals, issued December 7, 2023 (Docket No. 364006).

-2-

## II.  DISCUSSION

Plaintiffs argue that defendants were not entitled to offer-of-judgment sanctions because their offers were not genuine attempts to reach a resolution.  We disagree.

### A.  STANDARDS OF REVIEW

"In general, the interpretation and application of the offer-of-judgment rule is reviewed de novo."  *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 516; 844 NW2d 470 (2014).  However, the trial court's decision regarding whether to apply the interest-of-justice exception as a basis for refusing an award of attorney fees is reviewed for abuse of discretion.  *Id.*  "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes."  *Id*. at 517 (quotation marks and citation omitted).  Any factual findings "underlying an award of attorney fees are reviewed for clear error.  A finding of the trial court is clearly erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made."  *Id*. at 516 (citation omitted).

### B.  NOTE ON PROOF-OF-FUNDS LETTER

At the outset, it is important to note that, despite repeated and confident claims to the contrary, plaintiffs have wholly failed to prove that the proof-of-funds letter from Oppenheimer was a forgery.  In their briefs, plaintiffs take for granted that the letter was forged and discuss the matter in such a way as to suggest that its forgery was proved conclusively.  The briefs are riddled with statements such as, "This letter turned out to be a total forgery" and "[t]he Defendants submitted a forged letter on Oppenheimer stationary . . . .  [a]s is known now; Kevin Walton did not have sufficient funds to buy the home."  The record has *absolutely no admissible evidence* suggesting that the letter was a forgery.

Kim and Jodi Capello both claim in their affidavits that some unnamed attorney at Oppenheimer told them that defendants had no accounts with Oppenheimer, that the letter had altered letterhead, and that Oppenheimer did not have an employee by the name listed on the letter.  These statements were hearsay and are plainly inadmissible.  See MRE 801, 802.  Much of Jodi Capello's affidavit provided hearsay within hearsay as she was repeating information that the attorney had initially relayed to Kim Capello.  Plaintiffs claim that this attorney "promised to send an Affidavit," but no such affidavit ever came, and plaintiffs did not even provide the name of this person.  Even on appeal, when plaintiffs claim that the letter was forged, they cite their own affidavits to support the assertion.  Moreover, the trial court raised valid questions when it pondered aloud why Kevin Walton would enter a contract to purchase a house despite not having the ability to do so.  Regardless, plaintiffs' repeated and matter-of-fact insistence that this letter was forged has no evidentiary basis.

### C.  OVERVIEW OF OFFER OF JUDGMENT RULE

This case revolves around what is known as the offer-of-judgment rule, which is found in MCR 2.405.  The rule provides, in relevant part:

(A) Definitions.  As used in this rule:

(1) "Offer" means a written notification to an adverse party of the offeror's willingness to stipulate to the entry of a judgment in a sum certain, which is deemed to include all costs and interest then accrued. . . .

* * *

(4) "Verdict" includes,

(c) a judgment entered as a result of a ruling on a motion after rejection of the offer of judgment . . . .

* * *

(5) "Adjusted verdict" means the verdict plus interest and costs from the filing of the complaint through the date of the offer.

* * *

(B) Offer.  Until 28 days before trial, a party may serve on the adverse party a written offer to stipulate to the entry of a judgment for the whole or part of the claim, including interest and costs then accrued.

(C) Acceptance or Rejection of Offer.

(1) To accept, the adverse party, within 21 days after service of the offer, must serve on the other parties a written notice of agreement to stipulate to the entry of the judgment offered, and file the offer, the notice of acceptance, and proof of service of the notice with the court.  The court shall enter a judgment according to the terms of the stipulation.

(2) An offer is rejected if the offeree

(a) expressly rejects it in writing, or

(b) does not accept it as provided by subrule (C)(1).

* * *

(D) Imposition of Costs Following Rejection of Offer. If an offer is rejected, costs are payable as follows:

(1) If the adjusted verdict is more favorable to the offeror than the average offer, the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action.

* * *

> (3) The court shall determine the actual costs incurred. The court may, in the interest of justice, refuse to award an attorney fee under this rule. Interest of justice exceptions may apply, but are not limited to:
>
> > (*i*) cases involving offers that are token or de minimis in the context of the case; or
>
> > (*ii*) cases involving an issue of first impression or an issue of public interest. [MCR 2.405.]

MCR 2.405(D)(3) has come to be known as the interest-of-justice exception. Plaintiffs do not dispute that defendants made offers, that plaintiffs rejected the offers, and that defendants subsequently attained an adjusted verdict more favorable to them than their offers. Rather, plaintiffs argue that the interest-of-justice exception should have barred recovery of attorney fees.

"The purpose of MCR 2.405 is to encourage settlement and to deter protracted litigation. Viewed in light of this purpose, the 'interest of justice' provision is the exception to a general rule, and it should not be applied absent unusual circumstances." *AFP Specialties*, 303 Mich App at 518-519 (quotation marks and citation omitted). The interest-of-justice exception is "directed at remedying the possibility that parties might make offers of judgment for gamesmanship purposes, rather than as a sincere effort at negotiation." *Lluidens v 63rd Dist Court*, 219 Mich App 24, 35; 555 NW2d 709 (1996). "The unusual circumstances necessary to invoke the 'interest of justice' exception may occur where a legal issue of first impression is presented, or where the law is unsettled and substantial damages are at issue, where a party is indigent and an issue merits decision by a trier of fact, or where the effect on third persons may be significant." *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 521-522; 912 NW2d 216 (2018) (quotation marks, citation, and alterations omitted). "Factors such as the reasonableness of the offeree's refusal of the offer, the party's ability to pay, and the fact that the claim was not frivolous are too common to constitute the unusual circumstances encompassed by the 'interest of justice' exception." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 391; 689 NW2d 145 (2004) (quotation marks and citation omitted).

## D. CASELAW

This Court has issued numerous opinions addressing this rule.[3] In *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 21-22; 888 NW2d 267 (2016), this Court relied on the availability of comparisons when assessing the issue of gamesmanship:

---

[3] Plaintiffs repeatedly assert that this case raises novel issues by virtue of recent court-rule amendments removing the availability of case evaluation sanctions. It is true that MCR 2.403, which governs case evaluation, previously provided a mechanism through which sanctions would be imposed if a party who rejected a case evaluation subsequently received a less favorable

Although plaintiff argues that the Boardwalk defendants' offers of judgment were *de minimis*, there is no amount with which to compare their offers. There was no case evaluation award, and plaintiff did not request a specific amount of monetary damages. There is no information that plaintiff made a counteroffer under MCR 2.405, which could provide the trial court a manner in which to determine whether the offers were *de minimis*. Therefore, the trial court did not clearly err by concluding that the amounts offered failed to indicate that the Boardwalk defendants engaged in gamesmanship. Accordingly, the trial court did not abuse its discretion by holding that the interest-of-justice exception did not bar an award of costs and fees under MCR 2.405. [Citations and footnote omitted.]

Another noteworthy point from the analysis in *Tennine* is that, while the ultimate issue of the interest-of-justice exception is reviewed for abuse of discretion, the question of whether the offeror engaged in gamesmanship is a question of fact reviewed for clear error. *Id*.

Likewise, in *AFP Specialties*, 303 Mich App at 519-520, this Court assessed the issue of gamesmanship by comparing the offer of judgment with the case evaluation and counteroffers:

Last, AFP claims that Etna's offer of judgment was "gamesmanship" justifying invocation of the "interest of justice" exception because it was not much of a compromise and did too little to encourage settlement. But there was no case evaluation award to compare with Etna's offer of judgment to conclude that it was a "gamesmanship" or *de minimis* offer. Rather, Etna's offer of judgment was only slightly more than what AFP admitted that it clearly owed to Etna. Moreover, AFP did not make a counteroffer in an effort to resolve the dispute between it and Etna. The record also suggests that AFP was simply unwilling to compromise at all regarding paying any time-price differential to Etna. At best, AFP's rejection of the offer was reasonable. But the reasonableness of AFP's refusal of the offer does not "constitute the unusual circumstances encompassed by the 'interest of justice' exception." [Citations omitted.]

Notably, neither *Tennine Corp* nor *AFP Specialties* suggests that the issue of gamesmanship *must* be assessed in relation to case evaluation and counteroffers; rather, these simply are useful guideposts.

---

judgment, but these sanctions were removed by 2022 amendments to the court rules. However, the 2022 amendments neither added nor removed offer-of-judgment sanctions, and it is not clear how the removal of case-evaluation sanctions purportedly impacts an offer of judgment analysis. As evidenced by citations in plaintiffs' own brief, there is caselaw interpreting MCR 2.405 and the interest-of-justice exception. Therefore, contrary plaintiffs' assertions, there is nothing novel about this case.

While not binding,[4] a 1987 opinion of this Court emphasized the exceptional nature of the interest-of-justice exception:

> The plaintiffs' second argument is that the discretionary language "in the interest of justice" intends to permit awards of attorney fees only in those exceptional cases where there has been bad faith or unreasonable conduct.
>
> The purpose of MCR 2.405 is to encourage parties to settle matters prior to trial. If an offer to settle is made and the offer is not patently frivolous, this rule puts an obligation on the offeree to accept the offer or make a counteroffer. Rejecting or ignoring the offer puts the offeree to the judgment of the jury and, if he or she loses before the jury, at risk of costs and attorney fees provided in MCR 2.405. The rule does not require the court to determine relative ability to pay or other compensation which the offeree may or may not have received. [*Sanders v Monical Machinery Co*, 163 Mich App 689, 693; 415 NW2d 276 (1987).]

Finally, while also not binding,[5] unpublished opinions of this Court have emphasized that low offers, even offers of $0, are not necessarily *de minimis*, when the evidence is such that the offering parties know with relative certainty that they would prevail on the merits. See *Guillard v Hegewald*, unpublished per curiam opinion of the Court of Appeals, issued October 21, 2021 (Docket No. 353883); see also *Edington v Union Squre Dev, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 9, 2013 (Docket No. 303876).

## E. APPLICATION

Plaintiffs are not entitled to the interest-of-justice exception because defendants' offer was made at a point in the litigation when it was clear that they would prevail at summary disposition. Moreover, the record suggests that the protracted litigation in this case was a result of Kim Capello's personal vendetta against defendants rather than defendants' unwillingness to settle the case.

On remand, the trial court issued an opinion and order thoroughly explaining its exercise of discretion with respect to the interest-of-justice exception. Plaintiffs' argument essentially is that defendants' offers could not have been genuine in light of the fact that it was significantly lower than the amount being sought and the offers made by plaintiffs. However, as the court aptly observed, "Defendants' offers of judgment in this case were made after it was abundantly clear that Plaintiffs had suffered no damages in this action . . . ." While Kevin Walton's $821.71 offer might seem paltry when viewed relative to the case evaluation, it seems generous when viewed in

---

[4] While decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," this Court is not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

[5] Unpublished opinions of this Court are not binding, but may be considered for their persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

relation to the $0 he owed following summary disposition. With respect to Kevin Walton's offer, as the court noted, "Plaintiffs produced no evidence of damages in this action." The only attempt that plaintiffs made toward providing evidence of damages was a list of alleged "carrying costs" that they had personally prepared, but this was unsworn and had no supporting documentation. In essence, plaintiffs claim that they suffered damages was supported only by their bare assertions. When responding to a motion properly made pursuant to MCR 2.116(C)(10), "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). With respect to Melissa Walton, all of the evidentiary failures applicable to Kevin Walton are equally applicable to her. See *New Freedom Mtg Corp v Globe Mtg Corp*, 281 Mich App 63, 86; 761 NW2d 832 (2008) ("[D]amages are also an essential element of a fraud or misrepresentation claim."), overruled in part on other grounds by *Bank of America, NA v First American Title Ins Co*, 499 Mich 74; 878 NW2d 816 (2016). However, she was also clearly insulated from liability by virtue of a provision in the purchase agreement releasing the brokers from any liability arising from a failure to close the sale. Given Plaintiffs' failure to produce evidence of damages, we cannot dispute the court's observation that the Waltons "offered what they believed to be the most extreme outer limit of their liability to resolve this action."

We also note that plaintiffs' argument makes the mistake of assuming that plaintiffs' offers were reasonable attempts at settlement. When viewed in relation to the case evaluation, it was plaintiffs who were making outrageous offers. The case evaluation award of $3,000 was made nine days after plaintiffs offered to settle for $10,000, and that offer was only slightly lower than plaintiff's March 2022 offer of $12,000. Indeed, on January 17, 2022, plaintiffs wanted $45,000, which would have been 15 times the case evaluation award, and plaintiffs knew that $45,000 was likely to result in a significant windfall given the probability that they would eventually find a new buyer for the house.

Finally, concluding that defendants should not receive attorney fees because their offers were not genuine attempts to settle the case would be backward given the fact that it was plaintiffs' litigiousness, vindictiveness, and unreasonable demands that resulted in this extensive litigation. First, plaintiffs failed to be understanding of the fact that Kevin Walton's breach was a direct result of the sudden death of his brother, resulting in Kevin and Melissa Walton taking over care of their two minor nieces—one of whom died while this case was pending. Defendants initially attempted to avoid breaching the contract by offering a compromise through which they would lease the house with the option to purchase at the conclusion of the lease term, but plaintiffs demanded a nonrefundable option fee of $160,000 which would have defeated the purpose of the lease-to-buy compromise. Moreover, this litigation was complicated and prolonged substantially by plaintiffs' decision to file this lawsuit two days after Kevin Walton informed plaintiffs that he planned to breach the contract. Breach of contract actions are subject to a six-year limitations period, MCL 600.5807(9), so it would have been easy to wait until after the house was sold to a new buyer so that plaintiffs would know precisely what their damages were, if any.

Finally, the trial court relied heavily on the exceptional nature of this provision, correctly noting that only "unusual circumstances" warrant its invocation. The trial court's opinion that "[t]here was nothing unusual about the facts or law related to this case" was well supported by the record. Given the rarity of this rule's application and the deferential standard of review, we discern

no basis upon which to disturb the trial court's ruling. Therefore, the trial court did not err by concluding that the interest of justice exception to the offer of judgment rule was inapplicable.[6]

Affirmed. Defendants, being the prevailing parties, may tax costs. MCR 7.219.


/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Allie Greenleaf Maldonado

---

[6] To the extent plaintiffs raised other arguments, they were addressed and rejected in the previous opinion. See *Capello*, unpub op at 3-4.