Corrigan, C.J.
This case requires that we interpret a statute directing coordination of unemployment benefits with pension benefits. Plaintiff received a lump-sum pension payment under an employer-funded retirement plan. When plaintiff sought unemployment compensation, the Unemployment Agency[1] coordinated her weekly benefits with her prorated weekly amount of pension payments (i.e., the amount of pension benefits plaintiff would have received weekly had she not opted for a lump-sum payment). The ensuing reduction rendered plaintiff ineligible to receive any unemployment benefits. The Employment Security Board of Review and the circuit court upheld the reduction. The Court of Appeals reversed and held that coordination was not required.
We hold that the governing statute, MCL 421.27(f)(1), mandates coordination of plaintiff’s unemployment benefits with her pension benefits. We therefore reverse the judgment of the Court of *307 Appeals and reinstate the decision of the Board of Review and the judgment of the circuit court.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
Plaintiff began working for Ameritech in its Traverse City office in 1965. Thirty years later, Ameritech closed its Traverse City office and offered to continue plaintiffs employment in another office. She declined, electing instead to retire. Ameritech’s retirement incentive program entitled plaintiff to a $1,052.95 monthly pension allowance, which Ameritech fully funded. In lieu of monthly payments, however, plaintiff elected to receive her pension in a lump-sum in the amount of $185,711.55. Plaintiff also chose to transfer the lump-sum directly into her individual retirement account (IRA).
Plaintiff then applied for unemployment compensation. Ameritech argued in response to plaintiffs application that MCL 421.27(f) of the Michigan Employment Security Act, MCL 421.1 et seq., allowed coordination of plaintiff’s unemployment benefits with the amount of pension payments plaintiff would have received if she had elected the monthly payment option. The Unemployment Agency agreed and directed coordination under MCL 421.27(f). This coordination resulted in a reduction in plaintiff’s unemployment benefits in the amount of $243 weekly, rendering her ineligible to receive any unemployment benefits.[2] Plaintiff timely protested this determination, *308 but the Unemployment Agency upheld its decision on redetermination.
Plaintiff thereafter appealed the redetermination. A referee reversed the decision of the Unemployment Agency on the ground that neither MCL 421.27(f)(1) nor (5) required coordination since plaintiff had transferred the pension funds directly into her ira and thus had not “received” the funds within the meaning of the act. The referee relied on the Unemployment Agency’s Revised Benefit Interpretation No. 20.641, which indicates that an employee who rolls a pension amount over into an IRA does not incur immediate income tax liability because the Internal Revenue Service does not consider the payment “received” for income tax purposes.
Ameritech appealed the referee’s decision to the Michigan Employment Security Board of Review, which reinstated the Unemployment Agency’s determination in a split decision. The Board of Review ruled that the taxability of plaintiff’s pension benefit did not affect the operation of MCL 421.27(f) and that the lump-sum distribution was a “retirement benefit” under the plain language of the act. Accordingly, the board concluded that coordination was required under MCL 421.27(f)(1)(a).
One member of the Board of Review dissented, finding that plaintiff did not receive a retirement benefit because the lump-sum distribution had been rolled over into an ira. The dissenting member relied on Revised Benefit Interpretation No. 20.641 and the United States Department of Labor’s (USDOL) Unemployment Insurance Program Letter No. 22-97. The USDOL Letter No. 22-97 stated that pension amounts rolled over into an IRA within sixty days of receipt are *309 not gross income for purposes of federal income taxation and thus are not “received” for purposes of 26 USC 3304(a)(15)(A) of the Federal Unemployment Tax Act (futa), 26 USC 3301 et seq.[3] The dissenting member concluded that MCL 421.27(f) did not require coordination of plaintiffs weekly benefit amount.
The circuit court affirmed the Board of Review’s decision. The Court of Appeals then granted leave to appeal[4] and reversed the circuit court order. 239 Mich App 34; 607 NW2d 395 (1999). It held that another subsection, MCL 421.27(f)(5), governed and did not require coordination of benefits. Alternatively, the court stated in dictum that even if MCL 421.27(f)(1) applied, coordination was not required because 1) plaintiff had not received a “retirement benefit” within the meaning of MCL 421.27(f)(4), and 2) the phrase “receive or will receive” in MCL 421.27(f)(1) does not include the direct rollover of a pension fund to an IRA.
II. STANDARD OF REVIEW
This case requires us to ascertain the meaning and proper application of MCL 421.27. Issues of statutory interpretation are questions of law that we review de novo. Oade v Jackson Nat’l Life Ins Co, 465 Mich 244, 250; 632 NW2d 126 (2001); Donajkowski v Alpena Power Co, 460 Mich 243, 248; 596 NW2d 574 (1999).
*310 III. RELEVANT STATUTES
MCL 421.27(f)(1) has existed in essentially the same form since 1954 PA 197. It states:
[Notwithstanding any inconsistent provisions of this act, the weekly benefit rate of each individual who is receiving or will receive a “retirement benefit,” as defined in [MCL 421.27(f)(4)], shall be adjusted as provided in subparagraphs (a) . . . . However, an individual’s extended benefit account and an individual’s weekly extended benefit rate under [MCL 421.64] shall be established without reduction under this subsection unless [MCL 421.27(f)(5)] is in effect
(a) If and to the extent that unemployment benefits payable under this act would be chargeable to an employer who has contributed to the financing of a retirement plan under which the claimant is receiving or will receive a retirement benefit yielding a pro rata weekly amount equal to or larger than the claimant’s weekly benefit rate as otherwise established under this act, the claimant shall not receive unemployment benefits that would be chargeable to the employer under this act.
MCL 421.27(f)(1) thus requires an offset in unemployment compensation for retirement benefits if the employer charged with unemployment benefits funded the retirement plan. This type of reduction is known as “narrow coordination.”
Before 1980, federal law did not address coordination of unemployment and retirement benefits. In March 1980, Congress amended 26 USC 3304(a)(15) of the futa to require the coordination of unemployment benefits with employer-funded retirement benefits, regardless of whether the employer who had funded the retirement benefits was the same employer whose account would be charged for the *311 unemployment benefits. This type of coordination is known as “broad coordination.” Section 3304, particularly subsection (a)(15), of the futa requires the states to conform to federal policy regarding coordination of unemployment benefits to insure eligibility for federal funds or tax credits. See Gormley v General Motors Corp, 125 Mich App 781, 785-786; 336 NW2d 873 (1983). In response to the federal amendment, the Michigan Legislature promptly adopted broad coordination to the extent required by federal law. MCL 421.27(f)(5) states:
Notwithstanding any other provision of this subsection, for any week that begins after March 31, 1980, and with respect to which an individual is receiving a governmental or other pension and claiming unemployment compensation, the weekly benefit amount payable to the individual for those weeks shall be reduced, but not below zero, by the entire prorated weekly amount of any governmental or other pension, retirement or retired pay, annuity, or any other similar payment that is based on any previous work of the individual. This reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act, chapter 23 of subtitle C of the internal revenue code of 1986, 26 USC 3301 to 3311.
The federal mandate for broad coordination was short-lived. In September 1980, Congress amended 26 USC 3304(a)(15) to its present form, which requires only narrow coordination, i.e., that coordination specified in MCL 421.27(f)(1). Despite the federal amendment, the Michigan Legislature has never amended MCL 421.27(f)(5). MCL 421.27 thus retains both broad and narrow coordination provisions. We now address the interplay of those provisions.
*312 IV. PRINCIPLES OF STATUTORY INTERPRETATION
When interpreting statutory language, our obligation is to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute. Wickens v Oakwood Healthcare System, 465 Mich 53, 60; 631 NW2d 686 (2001). When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted. Huggett v Dep’t of Natural Resources, 464 Mich 711, 717; 629 NW2d 915 (2001); Donajkowski, supra at 248. Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute.
Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory. Wickens, supra at 60. Further, we give undefined statutory terms their plain and ordinary meanings. Donajkowski, supra at 248-249; Oakland Co Rd Comm’rs v Michigan Prop & Cas Guaranty Ass’n, 456 Mich 590, 604; 575 NW2d 751 (1998). In those situations, we may consult dictionary definitions. Id.
V. ANALYSIS
A. INTERPRETATION OF MCL 421.27(f)
The Court of Appeals determined that MCL 421.27(f)(5) controlled over MCL 421.27(f)(1):
We conclude that subdivision 27(f)(5) is controlling with regard to the coordination of plaintiff’s retirement benefits. Its purpose was to conform with the federal government’s *313 goal of maintaining certain uniformity among the state programs regarding the coordination requirements for unemployment compensation, which purpose would be defeated were Michigan to default to its own interpretations for coordination under its previous statutory provisions and, in this case, circumvent the clear result under subdivision 27(f)(5) that coordination of plaintiff’s benefits is not required.
Moreover, the express statutory language mandates a conclusion that subdivision 27(i)(5) controls over subdivision 27(f)(1). Subdivision f(5) was enacted after f(l) and provides: “Notwithstanding any other provision of this subsection . . . .” [Emphasis in original.] To apply subdivision 27(f)(1) independently of subdivision 27(f)(5) and deny plaintiff unemployment benefits is inconsistent with the result under federal law. Such an interpretation also creates an inconsistency within the statute, contrary to the rules of statutory construction. In construing statutes, seeming inconsistencies in the various provisions should be reconciled if possible. [Citation omitted.]
Accordingly, the Court of Appeals held that MCL 421.27(f)(5) exempted plaintiff’s benefits from coordination.
The Court of Appeals failed to give effect to every word and phrase of MCL 421.27(f). While the court acknowledged the phrase, “Notwithstanding any other provision of this subsection” in MCL 421.27(f)(5), it failed to give effect to similar language in MCL 421.27(f)(1), stating, “notwithstanding any inconsistent provisions of this act.” In addition, in finding that MCL 421.27(f)(5) controls over MCL 421.27(f)(1), the Court rendered nugatory MCL 421.27(f)(1), contrary to established rules of interpretation.
We believe that the language of MCL 421.27(f) is clear and unambiguous and must therefore be enforced as written. Huggett, supra at 717; *314 Donajkowski, supra at 248. MCL 421.27(f)(1) provides, in pertinent part:
[Notwithstanding any inconsistent provisions of this act, the weekly benefit rate of each individual who is receiving or will receive a “retirement benefit,” as defined in [MCL 421.27(f)(4)], shall be adjusted as provided in subparagraph (a) . . . .
(a) If and to the extent that unemployment benefits payable under this act would be chargeable to an employer who has contributed to the financing of a retirement plan under which the claimant is receiving or will receive a retirement benefit yielding a pro rata weekly amount equal to or larger than the claimant’s weekly benefit rate as otherwise established under this act, the claimant shall not receive unemployment benefits that would be chargeable to the employer under this act. [Emphasis added.]
This text requires coordination where the claimant’s unemployment benefits are chargeable to the employer who contributed to the financing of the claimant’s retirement benefits. Thus, “narrow coordination” is required “notwithstanding any inconsistent provisions of this act. . . .”
MCL 421.27(f)(5), on the other hand, requires “broad coordination” where necessary to conform to federal law:
Notwithstanding any other provision of this subsection, for any week that begins after March 31, 1980, and with respect to which an individual is receiving a governmental or other pension and claiming unemployment compensation, the weekly benefit amount payable to the individual for those weeks shall be reduced, but not below zero, by the entire prorated weekly amount of any governmental or other pension, retirement or retired pay, annuity, or any other similar payment that is based on any previous work of the individual. This reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act, chapter 23 *315 of subtitle C of the internal revenue code of 1986, 26 USC 3301 to 3311. [Emphasis added.]
This provision broadens the coordination required in MCL 421.27(f)(1) by compelling a reduction not only with regard to pension funds that the chargeable employer contributes, but also with regard to pension funds “based on any previous work,” regardless of whether the chargeable employer contributed the funds. MCL 421.27(f)(5) requires such “broad coordination” only when necessary to conform to federal law.
Thus, contrary to the Court of Appeals analysis, MCL 421.27(f)(1) and (5) are not inconsistent, but can be harmonized. While MCL 421.27(f)(1) always requires coordination of pension benefits that the chargeable employer contributed, MCL 421.27(f)(5) may also require coordination of pension benefits on the basis of the claimant’s previous work if such broad coordination is necessary to conform to federal law.
Our application of the plain language of these provisions does not render MCL 421.27(f)(5) nugatory. If Congress again chooses to require broad coordination, the additional reduction prescribed in subsection 27(f)(5) will be triggered. That federal law does not presently require the reduction does not render MCL 421.27(f)(5) nugatory and does not compel the Michigan Legislature to amend the statute.
B. THE MEANING OF “LIQUIDATION”
Because MCL 421.27(f)(5) does not apply here,[5] the question remains whether MCL 421.27(f)(1) required *316 coordination of plaintiff’s benefits. The Court of Appeals stated in dictum that even if MCL 421.27(f)(1) governed, it did not require an offset because plaintiff did not receive a “retirement benefit” within the meaning of MCL 421.27(f)(4)(a). That subdivision provides:
(4)(a) As used in this subdivision, “retirement benefit” mean a benefit, annuity, or pension of any type . . . that is:
(i) Provided as an incident of employment under an established retirement plan, policy, or agreement, including federal social security if subdivision (5) is in effect.
(if) Payable to an individual because the individual has qualified on the basis of attained age, length of service, or disability, whether or not the individual retired or was retired from employment. Amounts paid to individuals in the course of liquidation of a private pension or retirement fund because of termination of the business or of a plant or department of the business of the employer involved shall not be considered'to be retirement benefits. [Emphasis added.]
The Court of Appeals determined that plaintiff’s pension was not a retirement benefit within the meaning of MCL 421.27(f)(4)(a) because the fund was liquidated upon plaintiff’s termination when Ameritech closed its Traverse City office. This factual conclusion was erroneous!
Although the Ameritech Traverse City office was closed, the record does not reflect that the pension fund was liquidated. Random, House Webster’s College Dictionary (2000) defines “liquidate” as “to settle or *317 pay (a debt),” “to reduce (accounts) to order,” “to dissolve (a business or estate) by apportioning the assets to offset the liabilities,” “to convert (inventory, securities, or other assets) into cash,” “to get rid of, esp. by killing,” “to break up or do away with,” and “to liquidate debts or accounts.” The more pertinent of these definitions contemplate the elimination of an entire entity or the abolition of all assets or accounts within an entity. As such, liquidation would involve the Ameritech pension fund distributing all its assets. The distribution of a single employee’s vested interest is not a liquidation of the pension fund. In addition, plaintiff could have elected to accept her pension benefits as a monthly annuity, which clearly refutes the Court of Appeals conclusion that the fund had been liquidated.
Our dissenting colleague maintains that we misconstrue the meaning of MCL 421.27(f)(4)(a) by failing to consider the entire sentence in which “liquidation” appears. She attempts to generate an ambiguity in the phrase “liquidation of a private pension or retirement fund” by asserting that the phrase could refer either to an individual’s personal account or fund or to the collective pension fund. We reject the dissent’s view.
The meaning of the phrase in MCL 421.27(f)(4) (a)(ii) hinges on the word “liquidation.” As discussed, the plain meaning of that term requires distribution of all assets held in the pension fund for all employees. The dissent contends that the term “liquidate” has many definitions, some of which may be interpreted to apply to a sole pension account, such as that belonging to plaintiff. A word is not rendered ambiguous, however, merely because a dictionary defines it in a variety of ways. Upjohn Co v New Hampshire *318 Ins Co, 438 Mich 197, 208-209, n 8; 476 NW2d 392 (1991). Rather, the doctrine of noscitur a sociis requires that the term “liquidation” be viewed in light of the words surrounding it. Herald Co v Bay City, 463 Mich 111, 130, n 10; 614 NW2d 873 (2000). “Contextual understanding of statutes is generally grounded in the doctrine of noscitur a sociis: ‘[i]t is known from its associates,’ see Black’s Law Dictionary (6th ed), p 1060. This doctrine stands for the principle that a word or phrase is given meaning by its context or setting.” Brown v Genesee Co Bd of Comm’rs (After Remand), 464 Mich 430, 437; 628 NW2d 471 (2001), quoting Tyler v Livonia Schs, 459 Mich 382, 390-391; 590 NW2d 560 (1999).
In the context of the statute, the term “liquidation” pertains to multiple accounts rather than to an individual account. The statute exempts from the category of “retirement benefits” those amounts “paid to individuals in the course of liquidation of a private pension or retirement fund.” Therefore, the text contemplates that liquidation pertains to multiple accounts and not merely the single account of an individual pensioner. In addition, the liquidation must occur because of “termination of the business or of a plant or department of the business.” Such a termination would involve all employees within the business, plant, or department, and not merely a single employee. Therefore, in accordance with the doctrine of noscitur a sociis, the phrase “liquidation of a private pension or retirement fund” is not ambiguous; the language clearly refers to the distribution of all assets within the fund. Moreover, the dissent does not explain how the fund was liquidated where, as dis *319 cussed above, plaintiff could have chosen to collect her pension benefits as a monthly annuity.
Further, the dissent asserts that MCL 421.27(f)(4)(a) is a remedial statute that we should construe liberally in favor of plaintiff. We do not apply preferential rules of statutory interpretation, however, without first discovering an ambiguity and attempting to discern the legislative intent underlying the ambiguous words. Crowe v Detroit, 465 Mich 1, 13; 631 NW2d 293 (2001). Only if that inquiry is fruitless, or produces no clear demonstration of intent, do we resort to a preferential or “dice-loading” rule.[6] Because no ambiguity exists, the remedial rule of preference does not apply. Id.
The dissent also asserts that our interpretation of the statute produces “unconscionable results.” It is not the role of the judiciary, however, to second-guess the wisdom of a legislative policy choice. Our constitutional obligation is to interpret, not to rewrite, the law. The Legislature apparently determined that the same result should obtain regardless of whether an employee opts for a monthly annuity or for a lump-sum payment. Here, if plaintiff had elected a monthly annuity in lieu of the lump-sum payment, no question would exist that she would have been ineligible to receive unemployment benefits.
Moreover, plaintiff chose to accept her pension benefits instead of relocating to another Ameritech office. Ameritech had offered plaintiff the opportunity to continue her employment in another location, but she declined to do so. The payout followed plaintiffs *320 decision to retire rather than relocate. While the dissent contends that plaintiff had no choice but to accept her pension benefits, the record does not support this assertion. Accordingly, the condition set forth in MCL 421.27(f)(4)(a)(ii), providing an exception to the term “retirement benefit,” does not apply in this case.
Thus, whether Ameritech’s payment to plaintiff was a “retirement benefit” depends on whether it was “a benefit, annuity, or pension of any type” payable to her “because [she] has qualified on the basis of attained age [or] length of service . ...” In defining a “retirement benefit,” the Legislature has used words of common and ordinary meaning, and we apply them accordingly. Donajkowski, supra at 248-249; Oakland Co Rd Comm’rs, supra at 604. It is undisputed that plaintiff received a pension benefit on the basis of her age and years of service. Thus, she received a “retirement benefit” as contemplated in MCL 421.27(f)(4)(a).
C. THE MEANING OF “RECEIVE OR WILL RECEIVE”
The Court of Appeals also stated, in dictum, that even if plaintiffs distribution were a retirement benefit, it was exempt from coordination because “the Legislature did not intend the terms ‘receive or will receive’ under § 27(f)(1) to include the direct rollover of a pension fund to an ira ... .” The Court stated:
This construction of the statute is the most reasonable and comports with the benefit interpretations of both the ua and the usdol. Mesc Revised Benefit Interpretation No. 20.641 (November 29, 1995); Usdol Unemployment Insurance Program Letter No. 22-87, Change 1 (June 19, 1995). In reaching our conclusion, we are mindful that the role of the judiciary is not to engage in judicial legislation, but rather *321 to determine the way chosen by the Legislature. [Citation omitted.] We decline to interpret the statute to incorporate any change that overrides requirements clearly adopted by the Legislature. [239 Mich App 47.]
While this issue is one of first impression in the context of unemployment compensation, it has been addressed in the somewhat analogous context of worker’s compensation. White v McLouth Steel Products, decided sub nom Corbett v Plymouth Twp, 453 Mich 522; 556 NW2d 478 (1996).[7] In White, this Court construed MCL 418.354(1)(d), of the Worker’s Disability Compensation Act, MCL 418.101 et seq., which directs that worker’s compensation benefits be coordinated with “[t]he after-tax amount of the pension or retirement payments received or being received . . . .” The employee in White rolled his lump-sum pension distribution into an IRA. The question was whether the nontaxable nature of the rollover transfer precluded coordination of the retirement payments with the worker’s compensation benefits. This Court ruled in favor of the employee. It rejected as “literalism” the employer’s contention that the employee “received” the transferred amount. This Court also stated that its interpretation was consistent with the language of MCL 418.354(1) (d), limiting coordination to the after-tax amount of the pension:
By reason of the tax-free aspect of a rollover into an ira, there is no taxable event and, hence, no tax or “after-tax amount” that is “received or being received.” [Id. at 547.]
*322 Three justices dissented in White. They opined:
The [majority] opinion dismisses the statute’s language by labeling as “literalism” defendant McLouth Steel Products’ argument that under the statute White has received his pension payment. Ante at 544. [T]he better phrase would be plain meaning. Subsection 354(l)(d) provides that weekly worker’s compensation benefits may be reduced by the “after-tax amount of the pension or retirement payments received” by the employee and does not condition the coordination of pension benefits on whether the employee actually begins to use these funds or invests them in a plan in which he will only later receive payments. . . .
The majority attempts to justify its interpretation ... by noting the statute’s use of the “after-tax amount,” but fails to note that [MCL 418.354(13)] defines “after-tax amount” as the amount remaining after subtracting the estimated tax the employee would pay on the benefit, not the actual tax the employee incurred .... [Id. at 562-563 (emphasis in original).[8]
MCL 421.27(f)(1) is the unemployment compensation counterpart of MCL 418.354(l)(d), but it lacks the “after-tax amount” language on which the White majority relied in part. The question here is whether plaintiff “received” the transferred amounts. Random House Webster’s College Dictionary (2000) defines “receive” as “to take into one’s possession,” “to have (something) bestowed, conferred, etc.,” “to hold, bear, or contain,” and “to take, get, accept, or meet with something.” In light of these definitions, we conclude that plaintiff received her retirement benefits within the meaning of MCL 421.27(f)(1), notwithstanding the *323 fact that Ameritech transferred the funds directly into her IRA. We disagree with our dissenting colleague that plaintiff did not take the pension funds into her possession within the meaning of the dictionary definition of “receive.” The funds were transferred at plaintiff’s direction. She is able to withdraw the funds at any time and use them as she sees fit. Ameritech clearly conferred the funds upon plaintiff, and plaintiff accepted those funds by directing them into an account of her choice. Accordingly, it is inescapable that plaintiff received the funds. Because the dissenting opinion in White is better reasoned, following that approach, we conclude that plaintiff “received” the distribution at issue within the meaning of MCL 421.27(f)(1).[9]
Like the Court of Appeals, the dissent would erroneously elevate a construction from an extratextual source above the unambiguous language of the statute itself. As we have stated repeatedly, courts may not look beyond the clear text of a statute to discover an unexpressed legislative intent. Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999). Although this Court generally accords due deference to an administrative agency charged with executing a *324 particular statute, we grant no deference here because the plain meaning of the statute controls. “An agency inteipretation cannot overcome the plain meaning of a statute.” Consumers Power Co v Public Service Comm, 460 Mich 148, 157, n 8; 596 NW2d 126 (1999). The plain and ordinary meaning of “receive” provides no basis to differentiate between funds that are taxable and those that are not. Therefore, MCL 421.27(f)(1) requires coordination whether or not the funds are subject to taxation when plaintiff received them by directing their deposit into her IRA account.
VI. CONCLUSION
We conclude that MCL 421.27(f)(1) required coordination of plaintiffs unemployment benefits with her pension benefits. Plaintiff received a “retirement benefit” within the meaning of MCL 421.27(f)(1). That subsection required coordination, whether or not the funds were subject to taxation at the time of their receipt. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the decision of the Board of Review and the judgment of the circuit court.
Weaver, Taylor, and Young, JJ., concurred with Corrigan, C.J.

 The Unemployment Agency was formerly known as the Michigan Employment Security Commission.

 Because plaintiff’s pro-rata retirement benefits would have been equal to or greater than her weekly unemployment benefits, she was not eligible to receive unemployment benefits chargeable to Ameritech. See MCL 421.27(f)(1)(a).

 The Unemployment Agency issued Revised Benefit Interpretation No. 20.641 on November 29, 1995, in an apparent attempt to comply with OSDOL Letter No. 22-87.

 Unpublished order, entered July 7, 1998 (Docket No. 208176).

 Even if MCL 421.27(f)(5) applied, it would not change the result. Plaintiff did not receive extended benefits, but, rather, Ameritech contrib *316 uted to all the pension benefits paid to plaintiff. Plaintiff did not receive benefits from any employer other than Ameritech, the chargeable employer. Thus, even if federal law mandated broad coordination under MCL 421.27(f)(5), the facts of this case implicated only the narrow coordination already required by MCL 421.27(f)(1).

 See also Scalia, A Matter of Interpretation: Federal Courts and the Law (Princeton, NJ, 1997), pp 27-29.

 See, generally, Drouillard v Stroh Brewery Co, 449 Mich 293, 304-305; 536 NW2d 530 (1995) (holding that the employer could coordinate a lump-sum pension distribution with worker’s compensation benefits where the employee had been “forced” to accept the pension distribution).

8 More precisely, MCL 418.354(13) defines “after-tax amount” as the gross amount remaining after subtracting the amount “which would have been paid, if any, under . . . state income tax and federal income tax . . . .” [Emphasis added.]

 We overrule White to the extent that it is inconsistent with our present holding. The White majority also relied in part on the statutory language “after-tax amount” in MCL 418.354(l)(d) in support of its decision. We do not decide whether that aspect of White was decided correctly because it is irrelevant to our determination in this case.
Our concurring colleague asserts that overruling White in part is unnecessary because, unlike the statute in White, the statute before us does not contain the “after-tax amount” language. He fails to acknowledge, however, that in addition to the “after-tax amount” language, the White majority relied in part on an erroneous definition of “receive,” conditioned on the taxable nature of the funds in question. The concurring opinion, therefore, overlooks part of the reasoning upon which the majority in White based its decision.