*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KASANDRA CHOATE,

        Plaintiff-Appellee,

v

HURLEY MEDICAL CENTER and HURLEY
MEDICAL GROUP, PC, doing business as
HURLEY MEDICAL CENTER,

        Defendants-Appellants.

UNPUBLISHED
September 15, 2025
1:49 PM

No. 369731
Genesee Circuit Court
LC No. 23-118646-NH

Before: WALLACE, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

In this medical-malpractice action, defendants appeal by leave granted[1] the trial court's order denying them summary disposition under MCR 2.116(C)(8) (failure to state a valid claim) and (C)(10) (no genuine issue of material fact). On appeal, defendants argue the trial court erred by denying their motion for summary disposition because plaintiff's complaint was barred under the common-law wrongful-conduct rule and its statutory counterpart, MCL 600.2955b(1). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 29, 2020, plaintiff and her nine-year-old daughter were involved in a single-car rollover accident. According to the accident report, plaintiff drove off the road and hit a mailbox. Thereafter, she lost control of the vehicle and jumped an embankment, which sent her vehicle airborne. Neither plaintiff nor her daughter were restrained by a seat belt during the accident, and both sustained injuries. A Crash Data Retrieval report from the accident showed that

---

[1] *Choate v Hurley Med Ctr*, unpublished order of the Court of Appeals, entered September 20, 2024 (Docket No. 369731).

plaintiff was traveling at 155 mph before the crash. Additionally, testing of plaintiff's blood after the accident was positive for tetrahydrocannabinol (THC) and amphetamines.

Emergency personnel removed plaintiff from the vehicle at the scene of the accident. She was transported to Hurley Hospital with numerous injuries, including a severe spinal fracture with epidural hemorrhage and spinal cord compression, multiple rib fractures, a kidney contusion, hyperkalemia, hyperphosphatemia, and a parietal lobe cortical contusion. Plaintiff underwent multiple surgeries and was hospitalized for weeks after the accident. In one of these surgeries, plaintiff was reported to have sat in prone position for over 15 hours. In December 2020, while still hospitalized, plaintiff developed pressure wounds which worsened to Stage 4 pressure wounds and became infected and necrotic. Plaintiff underwent two debridement surgeries and additional hospitalization to treat these wounds.

In March 2021, plaintiff faced criminal charges for her conduct on November 29, 2020. Plaintiff was charged with the felony offense of reckless driving causing serious impairment of a body function of another person, MCL 257.626(3); and the misdemeanor offenses of fourth-degree child abuse, MCL 750.136b(7) and(8); contributing to the delinquency of a minor, MCL 750.145; and a moving violation resulting in serious impairment of a body function of another person, MCL 257.601d(2). Plaintiff pleaded no contest to a reduced charge of reckless driving, MCL 257.626, which is a misdemeanor. Plaintiff also pleaded no contest to the moving violation causing serious impairment and contributing to the delinquency of a minor.

In March 2023, plaintiff filed suit against defendants, alleging medical malpractice related to the pressure wounds. She alleged that, while she was hospitalized, nursing staff failed to recognize the wounds and develop an appropriate treatment plan. She alleged this failure caused her pressure injuries to progress to severe Stage 4 pressure wounds that required extensive medical and surgical intervention.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that plaintiff's wrongful conduct related to the car accident precluded her medical-malpractice claims under MCL 600.2955b because her bodily injury occurred during plaintiff's commission of a felony or flight therefrom. In response, plaintiff argued MCL 600.2955b was inapplicable because plaintiff did not sustain the bodily injuries in question, i.e., the pressure wounds, during the commission of a felony. In a reply brief, defendants raised the additional argument that plaintiff's claim was barred by the common-law wrongful-conduct rule, arguing that her wrongful conduct relative to the accident was the proximate cause of her injuries.

The trial court denied defendants' motion for summary disposition. At a hearing on the motion, the trial court explained that defendants presented undisputed evidence that plaintiff's conduct during the accident constituted a felony; however, MCL 600.2955b bars claims for personal injury when the injury that forms the basis of the claim can be shown to have been suffered during the claimant's commission of or flight from a felony, and defendants have not made such a showing. Likewise, the trial court explained the common-law wrongful-conduct rule applies when the wrongful conduct was an integral and essential part of the plaintiff's case and will not apply when a felonious act is merely a condition and not a contributing cause of the injury. The trial court reasoned that whether plaintiff's actions constituted a proximate cause of her

injuries was an issue for a jury, and defendants offered no evidence of causation. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Although defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10), we review their arguments under MCR 2.116(C)(10) because defendants attached documentary evidence beyond the pleadings in support of their motion. See *id*. at 159-160. A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted). When considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The trial court properly grants summary disposition when the moving party establishes, except for the amount of damages, there is no genuine issue as to any material fact. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

## III. MCL 600.2955b

Defendants argue plaintiff's medical-malpractice claims are precluded by MCL 600.2955b because plaintiff's personal injuries were sustained during her flight from the commission of a felony. We disagree.

In relevant part, MCL 600.2955b states as follows:

> (1) Except as otherwise provided in this section, the court shall dismiss with prejudice a plaintiff's action for an individual's bodily injury or death and shall order the plaintiff to pay each defendant's costs and actual attorney fees if the bodily injury or death occurred during 1 or more of the following:

> (a) The individual's commission, or flight from the commission, of a felony.

> (b) The individual's acts or flight from acts that the finder of fact in the civil action finds, by clear and convincing evidence, to constitute all the elements of a felony.

> * * *

> (7) As used in this section:

> (a) "Commission of a felony" means either of the following:

> (*i*) A conviction for a felony.

> (*ii*) An adjudication under . . . the probate code . . . an individual responsible for an offense that if committed by an adult would be a felony.

(b) "Felony" means a violation of a law of this state or of the United States that is designated as a felony or that is punishable by death or imprisonment for more than 1 year.

On appeal, plaintiff does not challenge the trial court's determination that plaintiff engaged in felonious activity in connection with the automobile accident. Additionally, defendants do not contend that plaintiff's injuries were sustained during the commission of a felony. Instead, the parties dispute whether the pressure injuries plaintiff sustained occurred during her flight from the commission of a felony. Resolution of this issue requires interpretation of the statute.

Our primary goal when interpreting a statute is to discern and give effect to the intent of the Legislature. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). "When the Legislature has unambiguously conveyed its intent in a statute, the statute speaks for itself, and judicial construction is not permitted." *Id*. We consider statutory provisions within the context of the whole statute and must "give effect to every word, phrase, and clause . . . [to] avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). When statutory terms are undefined, this Court interprets the terms according to their plain and ordinary meaning, considering the context in which the words are used, and may consult dictionary definitions if necessary to accomplish this task. *Koontz*, 466 Mich at 312; *Yudashkin v Linzmeyer*, 247 Mich App 642, 649-650; 637 NW2d 257 (2001).

The plain language of the statute expresses a legislative intent to bar a perpetrator's claim for bodily injuries when the injury "occurred during" his or her felonious activity, or "flight" therefrom. These terms are undefined and so we consult a dictionary for their ordinary definition. See *id*. The term "occur" is commonly defined as "to come into existence : HAPPEN" and, the term "during" is commonly defined as "at a point in the course of." *Merriam-Webster's Collegiate Dictionary* (11th ed). Additionally, the ordinary meaning of the term "flight" in this context is "an act or instance of running away." *Merriam-Webster's Collegiate Dictionary* (11th ed). Accordingly, for MCL 600.2955b to bar a complaint, the plaintiff's bodily injury must have happened in the course of committing, or fleeing from, a felonious act.

In this case, the bodily injuries alleged in plaintiff's malpractice claim do not appear to have "occurred" during plaintiff's felonious activity or flight therefrom. Rather, it appears that plaintiff developed her pressure wounds during her hospital stay in the days and weeks after she engaged in the felonious activity. By the time she was in the hospital, her criminal conduct was complete. There is no allegation that plaintiff attempted to flee from her felonious act. She was removed from the scene of the accident by emergency personnel and confined to a hospital bed when the pressure wounds developed.

Defendants seek for this Court to extend the statute's applicability to bodily injuries in which the injury is "connected with" or "related to" a felonious act. In support of this assertion, defendants advance the "public policy" argument that our courts should not condone the type of egregious and dangerous behavior that caused plaintiff's hospitalization. Essentially, defendants argue that because there is a causal link between plaintiff's felonious conduct and her eventual pressure wounds, but-for causation should suffice to bar her complaint.

-4-

However, to read MCL 600.2955b in this manner would extend the statute's reach beyond its plain language, which this Court will not do. See *Koontz*, 466 Mich at 412 ("Because the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute."). MCL 600.2955b specifies that its scope is limited to bodily injury that happened in the course of, committing, or fleeing from, a felonious act. The trial court did not err by denying defendants' motion for summary disposition on the basis that MCL 600.2955b did not apply.

## IV. COMMON-LAW WRONGFUL-CONDUCT RULE

Next, defendants argue plaintiff's claims are barred by the common-law wrongful-conduct rule. We disagree.

Michigan has long recognized the wrongful-conduct rule. See *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995). The rule applies when "a plaintiff's action is based, in whole or in part, on his own illegal conduct." *Id*. at 558. That is, a plaintiff "cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party." *Id*. at 558, quoting 1A CJS, Actions, § 29, p 286. The rule is "rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Orzel*, 449 Mich at 559. Our Supreme Court explained that several unacceptable consequences would result if courts lent their aid in these circumstances:

> First, by making relief potentially available for wrongdoers, courts in effect would condone and encourage illegal conduct. Second, some wrongdoers would be able to receive a profit or compensation as a result of their illegal acts. Third, and related to the two previously mentioned results, the public would view the legal system as a mockery of justice. Fourth, and finally, wrongdoers would be able to shift much of the responsibility for their illegal acts to other parties. [*Id*. at 559-560 (quotation marks and citations omitted).]

The wrongful-conduct rule has limitations. "The mere fact that a plaintiff engaged in illegal conduct at the time of his injury does not mean that his claim is automatically barred under the wrongful-conduct rule." *Id*. at 561. Rather, the rule applies only if (1) "the plaintiff's conduct [is] prohibited or almost entirely prohibited under a penal or criminal statute," (2) "a sufficient causal nexus [exists] between the plaintiff's illegal conduct and the plaintiff's asserted damages," and (3) the defendant's culpability is not greater than the plaintiff's culpability for the injuries. *Id*. at 561, 564, 569.

As previously stated, plaintiff does not challenge the trial court's ruling that she committed felonious acts at the time of the accident. Likewise, plaintiff does not argue that her felonious conduct was not sufficiently serious to invoke the wrongful-conduct rule, see *id*. at 561-562, or that both parties engaged in illegal conduct, but the parties do not stand in pari delicti, see *id*. at 569. Instead, the issue is whether a sufficient causal nexus existed between plaintiff's unlawful conduct attendant to the car accident and the pressure wounds she sustained to bar recovery for her claims of medical malpractice against defendants.

In its examination of the causation requirement, the *Orzel* Court quoted approvingly from an encyclopedia on United States law:

> The maintenance of an action, under the general rule, may be refused or precluded only where the illegality or immorality with which plaintiff is chargeable has a causative connection with the particular transaction out of which the alleged cause of action asserted arose.

> The fact that a person has been guilty of a wrong in one particular does not make him an outlaw or forfeit his right to legal protection and relief in regard to others, and does not preclude him from maintaining an action based on a separate transaction, as, where the original wrongdoing is consummated, and unrelated to the later and independent wrongdoing of the defendant . . . .

> An action may be maintained where the illegal or immoral act or transaction to which plaintiff is a party is merely incidentally or collaterally connected with the cause of action, and plaintiff can establish his cause of action without showing or having to rely upon such act or transaction although the act or transaction may be important as explanatory of other facts in the case . . . . [*Id*. at 564, quoting 1A CJS, Actions, § 30, pp 388-389.]

The Court in *Orzel* applied this standard to bar an action for negligence brought against a drugstore on behalf of the plaintiff, who had a lengthy history of obtaining methamphetamine with fraudulent prescriptions. *Orzel*, 449 Mich at 552-553. The plaintiff's guardian asserted that the drugstore negligently and illegally supplied the plaintiff with drugs, causing him to become addicted and resulting in permanent mental illness. *Id*. at 553. The Court held that recovery was barred under the wrongful-conduct rule because the complaint was based, in part, on the plaintiff's own illegal conduct. *Id*. at 577. The Court explained "the illegal conduct that John Orzel engaged in while he was sane served as 'a' proximate cause of his asserted injuries." *Id*. at 567. Specifically, "[t]he chronology of John Orzel's use of [methamphetamine] while he was sane makes plain that his illegal use during that time was *the direct, immediate, and necessarily proximate cause* of his addiction to [methamphetamine], his hallucinations, and his mental illness—at least to the extent of being considered legally insane." *Id*. (emphasis added).

The *Orzel* Court contrasted the circumstances of the plaintiff's drug abuse with the circumstances of its previous decision in *Manning v Noa*, 345 Mich 130; 76 NW2d 75 (1956). In *Manning*, the Court declined to apply the wrongful-conduct rule to bar a plaintiff's negligence action against a premises owner for damages she sustained when she fell into a hole located on the property. *Id*. at 132. She fell into the hole after she participated in an illegal bingo game at the church located on the property. *Id*. at 131-132. In declining to apply the wrongful-conduct rule to the plaintiff's complaint, the Court emphasized that the plaintiff's participation in the illegal bingo game already concluded by the time she fell into the hole. *Id*. at 134-135. The Court further explained that it did not consider the illegal bingo game to be a "substantial causal factor" of the plaintiff's injuries. *Id*. at 135. The difference between the plaintiffs in *Orzel* and *Manning* was that the illegal bingo game in *Manning* "merely served as an occasion for the injury asserted," while the plaintiff's lengthy history of illegally obtaining methamphetamine while he was sane

"serves as a proximate contributing cause of his asserted injuries." *Orzel*, 449 Mich at 568-569, citing *Manning*, 345 Mich at 136.

In this case, plaintiff's unlawful acts were not "integral and essential" to her action for medical malpractice as pleaded. See *Orzel*, 449 Mich at 565. Her malpractice action, as pleaded, did not implicate her felonious acts but was founded on the alleged negligent treatment by defendants' nursing staff during plaintiff's hospitalization. A medical-malpractice claim involves "the failure of a member of the medical profession, employed to treat a case professionally, to fulfill the duty to exercise that degree of skill, care and diligence exercised by members of the same profession, practicing in the same or similar locality, in light of the present state of medical science." *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 424; 684 NW2d 864 (2004) (quotation marks and citation omitted). To prevail on her malpractice action, plaintiff must establish:

> (1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

Although plaintiff presented at defendants' hospital with serious, life-threatening injuries sustained in the rollover crash caused by her reckless driving, defendants still had a duty to treat plaintiff during her hospitalization in accordance with applicable standards of medical care. See *Bryant*, 471 Mich at 424. Plaintiff alleged that defendants' nursing staff breached that duty by failing to prevent her pressure injuries from developing, then progressing to infection and necrosis, during her hospitalization in the weeks after the accident. Accordingly, to fully plead her medical-malpractice action, plaintiff did not need to report, or otherwise rely on, her illegal conduct involved with the accident at all, even though that information may have been pertinent to explain the circumstances of her hospitalization, i.e., how she came to be at defendants' hospital and the nature and extent of her initial injuries. See *Orzel*, 449 Mich at 564-565. Further, the proofs required to satisfy the elements of a medical-malpractice claim would be the same regardless of what caused plaintiff's accident. See *Craig*, 471 Mich at 86. Accordingly, plaintiff's malpractice action, and the recovery she sought, are not dependent on her having violated the law by driving recklessly and endangering her child, but on the alleged malpractice that was a separate wrong occurring after, and independent of, plaintiff's reckless driving. See *Orzel*, 449 Mich at 564.

Finally, defendants contend that this is a case where failure to apply the wrongful-conduct rule will result in plaintiff profiting from her felonious conduct. As noted, the wrongful-conduct rule is rooted in the public policy "that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Id.* at 559. In this case, barring plaintiff's claims will not further this policy. Plaintiff has not attempted to shift responsibility to defendants for her wrongful conduct that led to her accident-related injuries. Instead, she seeks to hold defendants accountable for injuries she asserts resulted from defendants' alleged negligence during her hospitalization. To hold otherwise would shield defendants from responsibility for their alleged breach of their duty to treat plaintiff with the requisite skill, care, and diligence. See *Bryant*, 471 Mich at 424.

The trial court did not err by denying defendants' motion for summary disposition.[2]

Affirmed.

/s/ Randy J. Wallace
/s/ Michael J. Riordan
/s/ James Robert Redford

---

[2] We emphasize that our analysis in this opinion is limited only to the issues presented to this Court on appeal, i.e., whether the the wrongful-conduct rule and MCL 600.2955b were applicable to bar plaintiff's claims.