*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff-Appellee,

v

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
March 20, 2026
1:00 PM

No. 371995
Oakland Circuit Court
LC No. 2023-199813-CZ

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

O'BRIEN, J. (*dissenting*).

I would conclude that, for KL to be considered Armel Mampouya's "ward" as that term is used in the no-fault policy that State Farm issued to Mampouya, KL had to be legally placed in Mampouya's care. I disagree with the majority's conclusion to the contrary and therefore respectfully dissent.

State Farm's policy identifies Mampouya as the named insured and extends coverage to any "resident relative" of Mampouya. The policy defines "resident relative" as follows:

> ***Resident Relative*** means a ***person***, other than ***you***, domiciled in the same household with the first ***person*** shown as a named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her ***spouse*** by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her domicile with that named insured; or
>
> 2. a ward or a foster child of that named insured, his or her ***spouse***, or a person described in 1. above.

-1-

State Farm argues that "ward" as used in the above definition of "resident relative" should be limited to legally recognized relationships, and that the trial court erred by giving it a more expansive definition. I agree.

State Farm's policy does not define the term "ward," and no one contends that it is a legal term of art, so it is appropriate to consult a lay dictionary to decipher the word's generally understood meaning. See *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010); *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007). None of the modern dictionaries I have reviewed define "ward" as broadly as the majority does; they all define "ward" in relevant part as a person legally placed in the care of another, generally a guardian or court. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "ward" as

> a person or thing under guard, protection, or surveillance; as **a :** a minor subject to wardship[1] **b :** a person who by reason of incapacity (as minority or mental illness) is under the protection of a court either directly or through a guardian appointed by the court—called also *ward of court* **c :** a person under the protection or tutelage of a government.

*Random House Webster's College Dictionary* (2nd ed) defines "ward" in pertinent part as "a person, esp. a minor, who has been legally placed under the care of a guardian or a court." And the relevant definition of "ward" in *Webster's New World Dictionary* is "one under care of a guardian or court." These definitions all suggest that the plain and ordinary understanding of "ward" implies a recognizable legal relationship in which one individual is legally placed in the care of another.

Of course, I am sure that one could find a dictionary that defines "ward" more broadly,[2] but that would not change my opinion because I believe that, in context, "ward" as used in State Farm's policy was clearly intended to refer only to a legally recognized relationship, consistent with the above definitions of the term. As our Supreme Court recently reiterated, the context in which a word is used is essential to understanding the meaning plainly intended. See *Hackel v Macomb Co Bd of Comm'rs*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166363); slip op at 10 (explaining that a word's "plain and ordinary meaning . . . must be understood in light of the context in which the word[]" is used) (quotation marks and citation omitted). Considering a word's context requires viewing the word in conjunction with "those which precede and those which follow." *Sanchick v Michigan State Bd of Examiners in Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955). This is commonly referred to as "the doctrine of *noscitur a sociis*: 'it is known from its associates.' " *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 318; 645 NW2d 34 (2002) (citation and alteration omitted).

The term "ward" appears in State Farm's policy defining the phrase "resident relative." The definition is expansive. It includes those "related to" the named insured or his or her spouse "by

---

[1] The same dictionary defines "wardship" in relevant part as "the state of being under a guardian." *Merriam-Webster's Collegiate Dictionary* (11th ed).

[2] Recognizing that "ward" can be defined in different ways does not make the term ambiguous. See *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 317; 645 NW2d 34 (2002) ("A word is not rendered ambiguous . . . merely because a dictionary defines it in a variety of ways.").

blood, marriage, or adoption," as well as "a ward or a foster child" of the named insured, his or her spouse, or a person related to the named insured or his or her spouse by blood, marriage, or adoption. In other words, "resident relative" as used in State Farm's policy identifies five types of "relatives": (1) those related to the named insured or his or her spouse by blood; (2) those related to the named insured or his or her spouse by marriage; (3) those related to the named insured or his or her spouse by adoption; (4) those who are wards of the named insured, his or her spouse, or one of their relatives by blood, marriage, or adoption; and (5) those who are foster children of the named insured, his or her spouse, or one of their relatives by blood, marriage, or adoption. Many courts in different states have reviewed similar insurance policies and concluded that all of these types of "relatives" share one thing in common—they all described legally recognized relationships. I am persuaded by the reasoning of these sister courts and would adopt similar reasoning to conclude that "ward" as used in the context of State Farm's policy describes a legally recognized relationship—one in which a person is legally placed in another's care See *Glen Falls Ins Co v Smith*, 217 W Va 213, 222; 617 SE2d 760 (2005) (holding that "the terms 'ward' and 'foster child' as used in the context of the definition of 'family member' in an automobile insurance policy are terms which describe a legally recognized relationship"); *Pisani v Travelers Ins Co*, 29 Mass App Ct 964, 965; 560 NE2d 155 (1990) ("Dictionary definitions of 'ward' describe a minor or an incompetent person placed under protection by order of a court, at least in a legal context, and the context in which we are examining the word is in a document designed to prescribe legal rights and obligations. . . . That the legal sense of 'ward' is intended also appears from the very sentence in which the word appears. That sentence, which reads, 'This includes wards or foster children,' follows 'anyone living in your household who is related to you by blood, marriage or adoption.' The word 'includes' relates back to the words 'by blood, marriage or adoption.' The latter words connote legal bonds rather than the informal status . . . ."). See also *Virginia Farm Bureau Mut Ins Co v Gile*, 259 Va 164, 170; 524 SE2d 642 (2000) (" 'Relative' is defined by the policy as 'a person related to the named insured by blood, marriage or adoption, including a ward or foster child, who is a resident of the same household.' We conclude that the term 'foster child,' as employed in this definition, unambiguously refers to a child who resides in the same household with the named insured and has a relationship recognized by law with the named insured. *Our conclusion is based on the context in which the term is used, which exclusively describes such relationships recognized by law*.") (emphasis added); *Congdon v Auto Club Ins Co*, 174 Vt 586, 587; 816 A2d 504 (2002) (looking to a statutory definition of "ward" to determine the term's "common understanding" when used in an insurance policy).

The majority concludes that "the plain and ordinary meaning of the term 'ward' . . . is not limited to a formal, court-appointed relationship, and it may include a person under the protection, care, and tutelage of another." It reaches this conclusion largely on the basis of this Court's opinion in *Hartman v Ins Co of North America*, 106 Mich App 731; 308 NW2d 625 (1981), and principally on the following reasoning from that case:

> It is obvious that the term "ward" as used in [the insurer's] policy should not be restricted in its definition to include only a person on behalf of whom a legal guardian has been appointed by a court of competent jurisdiction. Rather, a common and ordinary dictionary definition of "ward", offered by *Webster's Third New International Dictionary* (1965), p. 2575, is "a person . . . under the protection or tutelage of a person". It is therefore necessary to examine the factual context of the case at bar to determine whether [the injured individual] was a "ward" of the [insured] as that word is used in common parlance. [*Hartman*, 106 Mich App at 739.]

I do not believe that a 45-year-old case, which relies on a single 60-year-old dictionary's definition of a word, is a reliable source for determining how that word is understood today.[3] See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 563 n 58; 886 NW2d 113 (2016) (explaining that, when using a dictionary to define a term, courts are to refer to dictionaries in use at the time of drafting); *People v Wood*, 506 Mich 114, 123 n 7; 954 NW2d 494 (2020) (explaining that it is appropriate to consult dictionaries released a reasonable time after drafting because "[d]ictionaries tend to lag behind linguistic realities") (quotation marks and citation omitted); *Wood*, 506 Mich at 133 (VIVIANO, J., dissenting) (explaining that "[t]he best practice, when employing dictionaries, is to use multiple versions from the relevant period").[4]

But accepting that a modern dictionary may define "ward" the same as *Webster's Third New International Dictionary* (1965), I believe that the context in which "ward" is used in State Farm's policy establishes that it was intended to refer only to instances in which an individual is legally placed in the care of the named insured or another identified relative, as explained earlier. The majority disagrees in part because "foster child" and "ward" both refer to "relationships entail[ing] taking care of a person who is not related by blood," but I think that the pertinent context that we should consider is the entire definition of "resident relative" in State Farm's policy, not a mere subset of that definition.

The majority is unpersuaded because it believes that any "reliance" on the context in which "ward" is used in State Farm's policy "is misplaced" because there was an "even stronger" argument for applying the doctrine of *noscitur a sociis* in *Hartman* "yet this Court held that a formal court-appointed guardian was not required." But *Hartman* simply did not address the context in which "ward" was used in the relevant definition. If we are to infer anything from this silence, it should be that the *Hartman* Court failed to consider the context in which "ward" was used in the policy at issue in that case, making *Hartman*'s reasoning unpersuasive.

---

[3] The majority attempts to bolster its preferred definition of "ward" by citing to *Serra v Estate of Broughton*, 364 P3d 637; 2015 OK 82 (2015), but the Oklahoma Supreme Court in *Serra* explicitly declined to adopt a definition of "ward." See *id*. at 642 ("We need not decide what a precise definition of 'ward' should be."). The portion of *Serra* that discusses a definition of "ward" was discussing how that term was defined by the Tenth Circuit in *Houston v Nat'l Gen Ins Co*, 817 F2d 83 (CA 10, 1987). There, to define the term "ward," the Tenth Circuit looked to *Webster's Third New International Dictionary*, see *Houston*, 817 F2d at 85, which is the same dictionary that this Court in *Hartman* relied on.

[4] The majority contends that it is actually "more appropriate" to look to an older dictionary to define "ward" as used in the parties' contract because "ward" has been used in similar insurance policies "for decades." This ignores that insurance policies are contracts, and "the primary goal" when interpreting a contract is to "effectuate the intent of the contracting parties." *City of Grosse Pointe Park v Michigan Muni Liability & Prop Pool*, 473 Mich 188, 218; 702 NW2d 106 (2005). When the parties agreed to this contract in 2019, why would they have understood "ward" to have a definition from a 1960s' dictionary? If we are going to rely on dictionaries as tools to effectuate the parties' intent, I would rely on dictionaries in use closer to the time of the agreement, as this will best reflect how the parties understood the word when they agreed to it.

The majority also claims that this Court "reaffirmed our holding in *Hartman*" in *US Fidelity & Guar Co v Citizens Ins Co*, 241 Mich App 83, 87; 613 NW2d 740 (2000), but this overstates the significance of *US Fidelity*. It is true that the *US Fidelity* Court quoted the relevant portion of *Hartman*, but it then immediately explained:

> In the present case, plaintiff recognizes the authority of *Hartman* and acknowledges that it is factually indistinguishable in all but one respect. Plaintiff argues that because the adult home in *Hartman* was operated by individuals, while the adult home in the present case was operated by a corporation, the result should be different. We disagree. [*Id*. at 88.]

Whether *Hartman* correctly defined the term "ward" was simply not at issue in *US Fidelity*; the parties in that case were only disputing whether an individual could be a "family member" (and thus a "ward") of a corporation. See *id*. at 88-89.

That aside, I question whether *Hartman* and *US Fidelity* even remain good law. In *Michigan Ins Co v Nat'l Liability & Fire Ins*, unpublished opinion of the Court of Appeals, issued February 14, 2012 (Docket No. 301980), pp 1-2, the injured individual was a resident of an adult foster-care facility, and the issue was whether this injured individual was covered as a "family member" under the facility's policy. The policy defined "family member" as "a person related to you by blood, marriage, or adoption who is a resident of your household, including a ward or foster child." *Id*. at 2. This Court adopted the definition of "ward" from *Hartman* and *US Fidelity* and concluded that there was a genuine issue of material fact whether the injured individual fell into this category of "family members." *Id*. at 3. On appeal, our Supreme Court reversed and remanded for the trial court to grant summary disposition in favor of the defendant-insurer, concluding that there was no genuine issue of material fact that the injured individual was "not a 'relative' of the adult foster care corporation named in the insurance policy," and that this Court "erred by holding that the [injured individual] may be subject to coverage under the defendant's no-fault automobile insurance policy issued to the adult foster care corporation." *Michigan Ins Co v Nat'l Liability & Fire Ins Co*, 493 Mich 924, 924 (2013). Our Supreme Court did not mention *Hartman* or *US Fidelity*, however. From this, it is clear that our Supreme Court in *Mich Ins* did not explicitly overrule *Hartman* and *US Fidelity*. Yet it is wholly unclear how *Hartman* and *US Fidelity* are distinguishable from *Mich Ins* (if they are).

Regardless, accepting that *Hartman* and *US Fidelity* remain good law, I am troubled by the implications of the expansive definition of "ward" that the majority accepts from *Hartman*. Defining a "ward" as a person "under the protection or tutelage of" another means that virtually every time a parent leaves a child in the care of another, that child may well become that person's "ward." If a child is dropped off at a friend's house for a playdate, the child is under the other parent's protection and thus may become the other parent's ward; a child who is dropped off at practice is under the coach's protection and guidance and thus may become the coach's ward; if a neighbor watches a child while the parent steps away to take a phone call, the child is under the neighbor's protection and thus may become the neighbor's ward; and so on. In all of these examples, the child is only briefly under another's protection or tutelage for a limited purpose, but the extent of the child's relationship with the caretaker and how long the child is in the caretaker's care are simply not relevant under *Hartman*'s definition—a "ward" can be any person simply "under the protection or tutelage" of another.

Outside of children, *Hartman*'s definition of "ward," if taken literally, has the potential to also make a host of adults "wards" of others. A friend who visits from out of town and stays in a guest bedroom may be under the host's protection and could thus become the host's ward. The same is true of a friend who stays on a host's couch for a few days while moving. More absurdly, because *Hartman*'s definition of "ward" engulfs a person "under the tutelage" of another, an individual who is mentored by a colleague at work could even be considered the mentor's ward.[5]

These examples all satisfy *Hartman*'s expansive definition of the term "ward." Yet, surely, no one believes that the parties intended for these individuals to be "wards" as that term is used in the policy that State Farm issued to Mampouya. So, to avoid interpreting State Farm's policy in a way clearly not intended by the parties, I would not apply *Hartman*'s expansive definition of "ward." Instead, I would conclude that "ward" as used in State Farm's policy describes instances in which an individual is legally placed in the care of the named insured (or his or her spouse or another identified relative).[6]

For all of these reasons, I disagree with the majority's conclusion that "the plain and ordinary meaning" of the term "ward" as used in State Farm's policy encompasses any "person under the protection, care, and tutelage of" the named insured, his or her spouse, or any person related to the named insured or his or her spouse by blood, marriage, or adoption. I would instead conclude that, consistent with a number of modern lay-dictionary definitions of the word and the context in which it is used in State Farm's policy, to be considered a "ward" under State Farm's no-fault policy, there must be a legally recognized relationship between the injured individual and the named insured, his or her spouse, or a person related to the named insured or his or her spouse by blood, marriage, or adoption. I therefore respectfully dissent.

/s/ Colleen A. O'Brien

---

[5] None of these examples even consider the implications of *Hartman*'s definition in conjunction with *US Fidelity*'s holding that a corporation can have "family members" (and thus "wards") for purposes of a no-fault policy. See *US Fidelity*, 241 Mich App at 88-89.

[6] *Hartman* and *US Fidelity* would not have come out differently had they had adopted this more sensible definition of the term "ward." In those cases, the injured individuals were residents of adult foster-care facilities, and there existed a legally recognized relationship between the injured individual and adult foster-care facility—the foster-care facilities contracted with the government to provide for the injured individuals' care. See *Hartman*, 106 Mich App at 735 (explaining that the owner of the injured individual's home provided for the injured individual's care "pursuant to a contract with the Center for Human Development, a state agency"); *US Fidelity*, 241 Mich App at 90 (M. J. KELLY, dissenting) (explaining that the adult foster-care facility contracted with "the state" to provide for the injured individual's care). So, while a guardian-ward relationship may not have existed between the named insureds and the injured individuals in *Hartman* and *US Fidelity*, the injured individual nevertheless had a legally recognized relationship with the named insured—the foster-care facility in each case was contractually obligated to provide for the injured individual's care.